## DUNCAN v. JETER.

1. Upon a sale of land, the vendor received from the vendees part of the purchase
money in hand, and for the residue took their notes payable in two instalments
of about one and two years, and executed to them his bond to make title to the
land so soon as he obtained the patent from the United States. The patent did
not arrive until after the last note fell due: *Held*, that the vendees could not
demand title without paying, or offering to pay the purchase money.

2. If a vendee of land wishes to rescind the contract of sale, he must pay, or offer
to pay the purchase money, according to his contract, and if the vendor refuses
to make the title, the vendee may rescind the contract by returning, or offering
to return the possession, and must abandon the possession, unless some circum-
stance, such as the insolvency of the vendor, or other sufficient cause authorises
the retention of possession for his indemnity.

ERROR to the Chancery Court sitting for Russell county.

This bill, which was filed by the plaintiff in error, charges, that
in January, 1839, the complainant and one Swan, purchased of
the defendant in error, a tract of land, at the price of thirty-two
hundred dollars, paying down at the time of purchase, one thou-
sand dollars; and executing their notes, one for one thousand dol-
lars, payable on the 25th December, 1839, and the other for
twelve hundred dollars, payable on the 25th December, 1840.

That the defendant executed at the time to complainant and
Swan, a bond, in the penalty of six thousand four hundred dol-

Duncan v. Jeter.

lars, with condition to make them a title to said land, with war-ranty, when the patent therefor arrived from Washington. That after the maturity of the first note they made a payment thereon, took it up and executed a new note for the residue, six hundred and twenty-five dollars; that in the year 1842, after the last note fell due, defendant commenced suit thereon against the com-plainant and Swan; that afterwards the patent for the land arriv-ed from Washington, and complainant and Swan, demanded from defendant the title thereto, presenting to him a deed for the land, which he refused to execute; that thereupon they considered the contract as at an end, and in the spring of 1842, brought an ac-tion on the bond for damages for failing to make title according to its terms. That thereupon the defendant filed a bill in chance-ry, against complainant and Swan, praying an injunction against the prosecution of their suit on the bond; which injunction was granted. That Swan has departed this life; that Jeter is insol-vent, or so nearly so, that he would be unable to respond in dam-ages for the breach of his bond.

The prayer of the bill is for a recision of the contract, and re-turn of the money paid, and for an injunction, which was granted by the register.

The defendant, by his answer, admits the sale of the land as stated in the bill; he admits that title was demanded after the pur-chase money had become due, and suits instituted on the notes; and avers that he offered to make the title, on the payment of the purchase money, and that he is still ready and willing to do so. He denies that he is unable to respond in damages, and demurs to the bill.

A motion being made to dismiss the bill, and also to dissolve the injunction, the chancellor dismissed the bill, which is now assigned for error.

BELSER, for plaintiff in error, cited 5 S. and P. 450; 4 Porter, 528; 1 Ala. Rep. 502; 2 ib. 108, 632; 3 ib. 42; 1 Hen. & Mun. 130.

HEYDENFELDT, contra.

ORMOND, J.—The contract for the sale of the land by the defendant in this court, to the plaintiff, and another, is exceeding-

ly simple, and the respective obligations and rights growing out of it, so easy to be understood, that it is wonderful it should have been made the source of so much litigation.

By the contract of sale, a portion of the purchase money was paid down, and a credit of about one and two years given on the residue, the vendor executing a penal bond with condition, to make title to the land as soon as he received it from the U. States.

As the time when the vendor could be called on for title, was uncertain, depending on his getting it from the government, whilst the time for the payment of the purchase money, was ascertained, the stipulations were independent. The vendor had a right to maintain an action for the purchase money, without averring that he had made, or offered to make a title to the land sold, and on the other hand, the vendees could demand title before the payments fell due, if before that time the vendor by the receipt of the patent from the government, had been in a condition to make title. [Pordage v. Cole, 1 Saunders Rep. 320, note 4, and cases there cited.]

The title, however, was not received from the government by the vendor until after the last instalment for the purchase money fell due. After this, the vendees demanded the title which the vendor offered to make on the payment of the purchase money, which they refused to pay, and he thereupon declined making the title.

This refusal, by the vendor, was entirely justifiable, as will be seen by enquiring what was necessary to be done by the vendees to entitle themselves to a rescision of the contract. A rescision of a contract does not follow as a consequence of its non-performance, by either party. [Stone v. Gover, 1 Ala. Rep. 289.] If the vendor improperly refuses to make title on demand the vendee may bring an action on the bond and recover for the breach of the contract, such damages as he has actually sustained by the failure of the vendor to comply with his contract; but it is obvious that such an action does not necessarily suppose the contract to be at an end. If the vendee wishes by a rescision to put an end to the contract he must himself be active and perform, or at least offer to perform the contract on his part. He must, in such a case as the present offer to pay the purchase money, and in addition,

must put the vendor in *statu quo*, by abandoning to him the possession of the land.    [Clemens v. Loggins, 1 Ala. Rep. 622.]

It is true, that in reference to the abandonment of possession, circumstances may exist which would authorize the vendee to retain it.    As where the vendor was insolvent and unable or unwilling to make the title; in such a case, the possession might be retained as the only means of reimbursement for money paid on account of the purchase.    Such was the case of Young v. Harris, [2 Ala. Rep. 108,] where relief was granted, under circumstances of that description, without abandonment of the possession by the vendor.

In this case, the vendees refused to pay the purchase money, although by their contract, it was due, retained the possession of the land, and now affect to consider the contract as at an end, although the vendor has always been willing to perform the contract on his part; such a pretension cannot be tolerated.

The case of Haynes v. Farley, [4th Porter, 528,] relied on by the plaintiff's counsel determines no point adverse to the view here taken.    In that case, there was a breach by the vendor, of the condition of the bond for title, by his failing to make title according to its terms, and this court held, that after an action was commenced at law by the vendee to recover damages for its breach, a court of equity would not interfere at the instance of the vendor, who showed no excuse for the failure to comply with his contract, anterior to the breach.    Here, there was no breach of the condition of the bond, but on the contrary, the vendor was always willing to comply with its terms, upon the performance by the vendees, of the contract on their part.

Our conclusion is, that there is no equity in the bill.

Let the decree of the chancellor be affirmed.