# CASES

## ARGUED AND DETERMINED,

## JANUARY TERM, 1848.

### GRIGGS v. WOODRUFF, ET AL.

1. An agent who has made a contract for the sale of land, and is to be allowed a commission upon the sale, is not a competent witness for his vendor, in a suit by the vendee to rescind the contract, for fraudulent representations made by the agent at the time of the sale.

2. A false representation of the lines of a tract of land, by which 160 acres of rich land were represented as belonging to the tract, which did not, is a sufficient ground for the rescission of the contract, the party making the representation, knowing at the time where in fact the line was.

3. A vendee, who after knowledge of a breach of the contract by the vendor, or of his inability to comply with it, negotiates with him, or enters into additional stipulations in reference to the contract, thereby waives his right to abandon it, for any cause then known to him.

4. The orphans' court has no power to direct the representatives of a deceased vendor to make title to land, unless the deceased, by an agreement *under seal*, had promised to do so.

5. When a purchaser of land had stipulated for a good title, on the payment of the purchase money, which title was in the heirs of a third person, who were non-residents, and when the parties to a bond indemnifying him against a mortgage upon the land, were also non-residents, and shown, one to be insolvent, and the other not proving his ability to respond in damages, a court of chancery will afford relief.

6. When the vendor is unable to make title, a tender of the purchase money and demand of title is not essential.

7. An assignee of notes, given upon the purchase of a tract of land, who is cognizant of all the facts, takes them subject to the equity which exists against the vendor.

Appeal from the Ninth Chancery District. Before the Hon. J. W. Lessesne.

THE bill was filed by the plaintiff in error for the rescission of a contract, by which he had purchased from one Herring, as the agent of Woodruff, a tract of land, executing his notes for the purchase money, and receiving a bond for title. The grounds upon which the rescission is prayed, are sufficiently set forth in the opinion of the court.

The answers deny the equity of the bill, and proof was taken, for which see the opinion of the court. The chancellor, at the hearing, dismissed the bill. From which the complainant appealed to this court.

BUFORD, for plaintiff in error.

He contended—1. That the case established fraud—first, by the assertion that Woodruff entered the land, and had good title; and secondly, by the misrepresentation of the lines of the tract. Young v. Harris, 2 Ala. 108; Camp v. Camp, 2 Id. 632; 1 Id. 645; Minor's R. 354; 1 Stew. 490; 3 S. & P. 92, 431; 3 Ala. 521, 352, 406.

2. That Hevring was an interested witness, and his testimony should have been rejected. Greenl. Ev. 438. 439, 461-2, 565.

3. That one holding a note as collateral security, is affected by all the equity which exists against the maker. 4 Ala. 39; 8 Ala. 920; 9 Porter, 37; 2 S. & P. 276; 2 Stew. 137; 5 Porter, 541.

4. To show the right of the complainant to rescind the contract, he cited 4 Ala. 86; 1 Ib. 622; 2 Id. 108, 182, 514, 572.

HEYDENFELDT, contra, insisted, that no incumbrance was shown upon the property seriously affecting the title, and that if a suit was necessary to get the title from Shorter, the complainant was protected by the covenant with Carnot Woodruff. But if this were not so, as he induced Shorter to take his notes, and received from him his covenant of indemnity against the mortgage of Smith & Co., his equity is extinct.

The vendee knew the state of the title—the vendors have used every diligence to perfect it, and if they have committed a technical error in applying to the orphans' court, chancery will not visit that error with the severity of rescinding the contract.

After full knowledge of the mistake, and defect of title, the vendee renewed his notes, and is thereby precluded from now raising the objection.

CHILTON, J.—The main grounds relied upon by the complainant for relief in this case, may be thus stated:

1. That Herring, the agent of Philo D. Woodruff, in effecting a sale of the land to the complainant, practised a fraud upon him, in pointing out a considerable portion of valuable cane hammock land as belonging to the tract, when in fact it was not included.

2. That he represented his principal, Philo D. Woodruff, as having entered the land, and as having title to the same, when the title was in another.

3. That said Herring, as well as Woodruff, fraudulently concealed the fact, that previous to the sale by Herring to the complainant, said Woodruff had executed to T. W. Smith & Co. of Liverpool, a mortgage on said lands, which mortgage was then, and still is wholly unsatisfied.

4. That the vendees can make no title to 'the land purchased by the complainant; that they are non-residents, and insolvent, and that consequently they should not be allowed to collect the purchase money. For these causes, complainant prays a rescission of the contract.

Before proceeding to the consideration of these several alledged grounds of equitable interposition, we will settle a preliminary question arising upon the admission of the testimony of Herring, the agent, who was examined as a witness by the respondents, and whose testimony was held admissible by the chancellor.

The reason urged for the rejection of his testimony by the complainant's counsel, is, that he was interested in the event of the suit, it appearing that he had received 'five per cent. commissions for selling the land, amounting, as he states, to two hundred and forty dollars. For this sum he received

the notes of complainant, the same being deducted from the purchase money for the land, a part of which notes was paid to him, and the remainder he traded to others. The witness denies an interest in the suit, and insists that Woodruff, his principal, was bound for his commissions, and should allow the same, whether the contract be set aside or not.

By reason of the little credit which experience has shown to be due to the testimony of interested witnesses, and to guard against the danger of perjury, the law wisely considers all persons incompetent to testify in a cause, who are interested in its result. The interest however which works a disqualification, must be legal, certain and immediate, in the cause itself, or in the record, as an instrument of evidence, in favor of the party who proposes to testify, in some subsequent cause. It is said, the true test of the interest of a witness is, whether he will gain or lose by the direct legal operation of the judgment or decree, or, whether the record will be legal evidence for or against him, in some other action. 1 Greenl. Ev. 458. The *fact* as to whether there is a real interest, is that which must determine the witness' competency, and not the *opinion* of the witness as to the existence of that fact. On the one hand, he may believe he is interested from his connection with the *question* to be decided, or from some *honorary obligation* respecting the matter in controversy, whereas such interest would not disqualify him. So, on the other hand, from a misapprehension of his legal liability he may suppose he is wholly uninterested, when in judgment of law he is clearly incompetent. Carroll v. Pathkiller, 3 Porter's Rep. 279. In the case at bar, the witness was to have five per cent. upon the amount of the purchase money, as his commissions for selling. This sum has been paid partly to the witness himself, and a portion of it to his assignee by the complainant. To rescind this contract by reason of the false and fraudulent representations of the agent, is the object of the bill. Now the question is, can this agent, by his own testimony, be allowed to purge the contract of fraud, and thus entitle himself to hold on to his commissions? For it is evident, that should the contract be set aside by reason of his fraud in obtaining it, he could not recover commissions for his *tortious* and void act. We think the chan-

cellor, both upon principle and authority, should have excluded said agent's deposition. Granting, that from considerations of convenience, and the necessity of the case, agents are allowed to testify as to acts done by them within the scope of their employment, although they have an apparent interest in the cause, and this principle may be extended to other than the servants of tradesmen, (which we need not now decide,) still we think this exception should never be allowed in a cause which involves the fraud, negligence, or tortious act of the agent. See 1 Greenl. Ev. P. 486, § 417; 1 Stark. Ev. 113; Fuller v. Wheelock, 10 Pick. Rep. 135; 1 Phil. Ev. 130; Givens v. Mainwaring, 1 Holt, 515; Cow. & Hill's Notes to Phil. Ev. 106, n. 95, and cases there cited.

Although, in the event of a recovery by the complainant, the record would not be evidence against the agent as to the fact that a fraud was committed, (the agent not being a party to the suit,) still the record would be evidence that the sale was cancelled upon the allegations of the bill. Greene v. The New River Company, 4 T. Rep. 589; 1 Phil. Ev. 130; 2 Ib. Cowan & H's Notes, 106, n. 95; The Hope, 2 Gal. Rep. 48.

The witness was interested in sustaining the contract, upon the validity of which his right to his commissions depended.

If, however, we were mistaken in the view we have taken as to the competency of Herring as a witness, and his testimony had been properly received, still we think the decree of the learned chancellor cannot be sustained, as we will proceed to show.

1. As to the alledged fraud in the location of the land— we cannot resist the conclusion, that the complainant, at the time he purchased the land, was led to believe, that the rich cane hammock land, between the confluence of Tarver's and Martin's creek, was a portion of the tract, which Herring was selling to him. It will be remarked, that the complainant, Herring, John E Jones, and John W. Griggs, were all the persons present at the time the land was examined by the complainant, and pointed out by Herring. The complainant charges that said Herring, at the time of said pur-

chase, falsely represented, that two considerable bodies of said hammock, embracing seventy-five acres, were upon the tract sold. The defendants have no personal knowledge of the fact here charged, and it rests upon the testimony of Herring, and the two other persons present. Each of these witnesses furnish a diagram of the land, and of the lines as exhibited by the agent. Herring swears that he showed the lines fairly and truly, and that instead of informing the complainant that the northern boundary line, which was not marked, crossed at the junction of Martin's and Tarver's creek, he actually run the line with a pocket compass, and crossed each creek at a distance of half a mile between them. The witness, John E. Jones, who is not related to the parties, and who appears to be wholly disinterested, states, that Herring showed about one hundred and sixty or seventy acres, he supposes, on the half section, and about twenty-five or thirty acres on the quarter section, as belonging to the tract, which were not included in fact, and that he represented the north line as crossing at the junction of the two creeks, which would have included purchase rendering the land materially more valuable ; and he states the difference in value between the tract as shown by Herring, and as it really exists, at between seven and eight hundred dollars. The other witness, John W. Griggs, who is the son of complainant, corroborates Jones in his statement, and proves, that the land shown by Herring as belonging to the tract, but was not included by the true boundary lines, was about 185 acres. That Herring said it was of the best quality, and represented the north line as crossing at the junction of the two creeks, whereas it crosses some four hundred and fifty, or five hundred yards above. That the effect of this misdescription was the cutting off from the tract as described, some 160 acres, and to throw the tract higher up the creek, on poorer ground. We cannot readily conceive, how one familiar with the boundary of the land, and living as near to it as the agent Herring, could have made the representations proven by Jones and Griggs, innocently. He admits himself, that he was acquainted with the lines and stations, except the half mile station on the west line; he must have known, as he now admits he did, that the north line of the half section did not cross at the junction of

Martin's and Tarver's creek.   Here then is a misrepresentation, made at the time of the sale, shown to affect materially the value of the land, directly proved by two witnesses, and denied by one only, (the answers averring ignorance concerning the charge,) and in our opinion entitles the complainant to a rescission of the contract, if in other respects he has entitled himself to the aid of the court.   This court has repeatedly held such fraudulent representations will avoid the contract at the suit of the vendee.   See Pitts v. Cottingham, 9 Porter's Rep. 675 ;  Harrison et al. v. Carter, 3 Stew. 233 ;  Camp v. Camp, 2 Ala. 632;  Calloway & McLeroy v. Flannagin, 3 Ala. R. 406 ;  Elliott v. Boaz & Davis, 9 Ala. R. 772.

2. The complainant alledges another ground for relief— "that at the time of the purchase, said agent falsely represented to him, that said Philo had entered said land in his own name, and had undoubted title, wholly unincumbered, and that these representations contributed to induce the complainant to enter into the purchase ; whereas, it appears the land was entered in the name of one Eli S. Shorter, who has since died, and who merely transferred to said Philo the certificate of entry, with a verbal understanding that he should pay to Carnot Woodruff, one half the proceeds of the sale of said land.   That Philo having purchased one moiety of the land, gave his notes to said Shorter, which were transferred to T. W. Smith & Co., to whom he was indebted, and that to secure the payment of these notes, given for the purchase money by said P. Woodruff, he executed a mortgage on these lands to said Smith & Co., which mortgage, it is charged, was unsatisfied, and was, as well as the condition of the title, fraudulently concealed from the purchaser.

The proof satisfactorily shows, that Herring, at the time, and before the consummation of the contract with the complainant, did represent the title of his principal as good, and unincumbered, and that a mortgage did then, and still does exist upon the land, executed by P. Woodruff to T. W. Smith & Co.   Also, it appears that neither Philo, nor Carnot Woodruff, had any legal title to the land, but that upon the sale by E. S. Shorter, he indorsed the certificate of entry, and delivered it to Philo Woodruff.   This is the only evidence

of title, which any of the defendants had at the time the
bill was filed.   The complainant, however, is entitled to no
relief on account of the mortgage, for it appears that after-
wards, with a full knowledge of the existence of it, he re-
affirms the contract, and took from James H. Shorter, a bond
indemnifying him against a failure of title by reason of it.
Whatever may have been his equity in respect to the con-
cealment of said mortgage, before this arrangement with
Shorter, it is too clear to admit of argument, that by it, he
waived his right to rescind the contract, by reason of said
incumbrance.   A party who desires to abandon or rescind a
contract, by reason of a breach of it by the opposite party, or
his inability to comply, must act promptly and decidedly, up-
on the first discovery of the cause for rescission.   If he nego-
tiates with the party afterwards, and lets the contract go on
—if he enter into additional stipulations with reference to
the contract, he certainly must be considered as waiving all
right to abandon, as predicated upon any fact then fully
known to him.   See Lawrence v. Dale, 3 Johns. C. R. 42.

The complainant, in his bill, admits a waiver of his right
to rescind virtually, by entering into this new agreement for
indemnity, but insists, that at the time, he supposed Philo
Woodruff had the title to the land, and that the mortgage to
Smith & Co. was the only difficulty with which he had to
contend.   That he has since learned the title was in E. S.
Shorter's heirs, (said Shorter having departed this life,) and
that the defendants are unable to make titles.   The answers
deny the complainant's ignorance of the situation of the title
at the time he gave the new notes and took up the old ones,
which was in April, 1840, and C. Woodruff answers, that as
far back as the year 1839, he went in person to the com-
plainant, and informed him of the situation of the title, and
exhibited the certificates of entry.   The answers being direct-
ly responsive to the allegations of the bill, must be consider-
ed as true, until overturned by proof.   The proof is silent
upon the subject, unless we have recourse to Herring's de-
position, and he sustains the answers.   The view we have
taken of complainant's equity with respect to the incum-
brance created by the mortgage, is equally applicable to the
title.   If, with a full knowledge that the land had been en-

tered in the name of E. S. Shorter, brought home to him in 1839, he retained possession of the land, and in the spring of 1840, renewed the notes and negotiated for indemnity as against the mortgage, he cannot be heard to complain that false representations were made originally by Herring, the agent, as to the title, upon a sale of the land in 1838, if the vendor, in a reasonable time, has enabled himself to make a title.

But notwitstanding we consider the complainant as having waived his right to avail himself of the false representations made at the time of the sale, both as respects the location of the land, and condition of the title, by the subsequent ratification of the sale, with a knowledge of the facts and circumstances, still, we think he has a substantial ground of equity, unaffected by this arrangement. He has never waived his right to a good title from his vendor, upon the payment of the purchase money. The question is, can he get such title? The answers aver that he can. That the orphans' court of Russell county has ordered the administrator of E. S. Shorter to make title to Philo D. Woodruff for the land, and a deed to him from the administrator was made, and is exhibited by Wilkinson, the agent of T. W. Smith & Co., who resides out of this State. The parties insist, that Philo W. can now make to the complainant, by virtue of this conveyance, such title as his bond requires. The proceedings of the orphans' court are not disclosed by any of the pleading, but we are advised that Woodruff merely held the transfer of the certificate by E. S. Shorter to him. It is shown that this transfer was not under seal; and in our opinion it was not such an instrument as authorized the orphans' court to take jurisdiction of the case. The statute provides that "where any person owning lands, or tenements, shall sell the same, and enter into bond or obligation to make titles thereto, and shall depart this life, without having made titles, in that case, the person to whom such bond or obligation was given, his executors or administrators, may petition the orphans' court of the county where probate of the will of such deceased person was taken, or letters of administration granted, to compel the executors or administrators to make

3

titles agreeably to the *bond, or obligation*, given by the de-
cedent," &c.. This court, at an early day, held, that in order
to give the orphans' court authority to make the order, the
instrument evidencing the agreement must be under seal.
Simpson's Adm'r v. Simpson, Minor's Rep. 33.   In Bland v.
Grant, Adm'r, 6 Ala. Rep. 110, it is said, the proceedings in
the county court, being founded on a statute, it cannot ob-
tain jurisdiction, unless the statute be strictly complied with.
The orphans' court is the creature of the statute, with powers
and duties limited and prescribed by the various legislative
enactments which have been passed, none. of which confers
the power to order titles to be made by the administrator, or
executor, except the decedent had in his lifetime executed
his *bond* or *obligation* for title.   We are constrained there-
fore, to regard the action of the orphans' court as nugatory,
and the deed made by Urquhart, the administrator of Eli S.
Shorter, as without any authority for its execution, and as
passing no title whatever.

The whole case, then, presented in a narrow compass,
shows that complainant at the time of his purchase supposed
he was dealing with one who had an unincumbered title to
the land which he purchased, and that he was purchasing
much valuable land, which does not belong to the tract:
That being undeceived, he still adhered to his contract, tak-
ing indemnity against the incumbrance and relying upon
his vendors for title.   One of these vendors is insolvent—the
other, although he denies his insolvency, does not by his an-
swer or otherwise, disclose to what extent he is able to re-
spond to complainant—both of them have removed from this
State.   Neither of them have the legal title, which is in the
heirs of Eli S. Shorter, charged it may be, with incumbrance
of dower, or equities in favor of the heirs, while the title pa-
pers are found in the hands of a non-resident agent of a for-
eign firm, who claims a *lien* upon the land by virtue of a
mortgage.   Under such circumstances, and after a lapse of
some nine years, during which period the vendors have fail-
ed to perfect their title, is it equitable to permit the remain-
der of the purchase money to be forced out of the complain-
ant, leaving him to hunt his vendor out of the state, to pur-
sue his doubtful remedy upon his bond?   We think it is not,

and that the case makes a strong appeal to the equitable interposition of the court.

As a general rule, it is certainly true, that to entitle the vendee to a rescission of the contract, he must pay, or offer to pay, the purchase money, according to his undertaking, and on the failure of the vendor to comply, he must promptly abandon the contract, and place the vendor in *statu quo*, by returning the possession of the land, (Duncan v. Jeter, 5 Ala. Rep. 604; Clemens v. Loggins, 1 Ala. Rep. 622;) but there are exceptions to this rule, growing out of the peculiar circumstances of cases and situation of the parties in reference to the subject matter of the contract. The vendee may, if the vendor cannot make title, and is insolvent, retain the possession, to indemnify him for monies paid, or improvements made upon the land, under the contract. So also, it has been held by this court, that an offer to rescind the contract by the vendee will be dispensed with, if the vendor by his answer shows the offer, if it had been made, would not have been acceded to. Elliott et al. v. Boaz et al. 9 Ala. R. 772. So in the case at bar, the vendors had no title, and if they ever can obtain one to the land, it must be after the minor heir of Eli S. Shorter attains his majority, or by proceedings in chancery, in which case the infant would have day, to show cause against the decree. Should the court of equity, which seeks to attain the substantial merits of the case, disregard the claims of justice, and postpone the right of the party in deference to mere form? As we have said before, the defendants had no title to convey. They rest upon what they esteem a legal title in Philo Woodruff, by virtue of Urquhart's conveyance under the order of the orphans' court, and a conveyance by Philo to complainant is deposited with the attorneys of Wilkinson, as we are advised by the answer of James H. Shorter. This is the muniment of title which the defendants insist complainant shall receive upon full payment, and this we have seen, conveys no title whatever. In our opinion there was no necessity for the complainant, before filing his bill, to go through the useless formula of tendering the money and demanding a title. When the complainant treated for the acquisition of the land, he was induced to believe, by the representations of the vendor,

through his agent, that he was purchasing from *the owner*, and upon payment of the stipulated price, would himself become the owner. It by no means follows, that because he did not choose to abandon the contract upon discovering the fraud which had been practised upon him by the agent, that he thereby consented to allow the vendor to force from him the purchase money before he was in a condition to convey the title. Nor was he bound to wait an unreasonable length of time for the vendor to invest himself with title so as to comply with his contract. Good faith and fair dealing under the circumstances of this case, required that defendant, Woodruff, should have proceeded within a reasonable time to make good the assertion of his agent, by possessing himself with the power of complying with his engagement before he sought the enforcement of the contract against complainant. This he has failed to do, and in our opinion has forfeited his right to insist upon the execution of the contract. But it is insisted that complainant is not injured by the vendor's incapacity to convey, that he can get a title by incurring the expense of a suit, against which expense his bond furnishes indemnity. The heirs of Shorter are not parties to this suit. We cannot then decide upon their rights, or determine the extent of their liens if any they have—*besides*, the objection is sufficiently answered by the fact that the complainant did not contract for the possibility, or even probability, of obtaining title from the heirs of a stranger, but for an unincumbered title represented as being in Philo D. Woodruff. It moreover appears by the answer of P. Woodruff, that he has never paid Eli S. Shorter for the land in question. His answer is in these words : " That the estate of the said Eli S. being largely indebted to the said T. W. Smith & Co., that said James H. Shorter, administrator of Eli S. Shorter, transferred to the said T. W. Smith & Co., among others, the notes the estate held on this defendant, *and which this defendant gave for the half interest in said parcels of land, and at the request of said James H.. and to secure the payment of the notes so transferred,* this defendant executed to the said T. W. Smith & Co. his mortgage deed, conveying among other lands, this defendant's half interest in the land so sold as aforesaid." Now, we are not informed how much was due from Philo to the estate of Eli S. Shor-

Griggs v. Woodruff et at.

ter for the land, but if we have recourse to the mortgage, as the same is exhibited to the answer of Wilkinson, the agent of T. W. Smith & Co., we find the sum secured to be paid, *fifty-one thousand dollars, besides interest, from the first day January*, 1838—one half of which sum is stated as due by Woodruff individually, and the other half by him and one Bethune. It is manifest, that if complainant pays his notes in the hands of Wilkinson, and the mortgage of T. W. Smith *&* Co. is released, this cannot discharge any lien which the estate of Eli S. Shorter may have upon the land for the payment of the balance of the purchase money due from Philo W. to the estate. These are questions however, which will only properly come up when application is made for title from Shorter's heirs, and we merely suggest them here to show, that it is by no means certain, (judging from the facts shown in the record,) that any title can be procured by P. Woodruff, who is shown to be insolvent. The fact too, that such a length of time has elapsed without any proper application on the part of P. W. to divest the heirs of title, is persuasive to throw a suspicion upon his right to demand it. We may safely assume that the complainant who purchased the land in its wild state, for the purpose of subduing and cultivating it, is injured by the incertitude as to the title, which renders it unsafe to improve it, lest he should improve the land of another.

We cannot agree with the defendant's counsel, that the circumstances under which James H. Shorter acquired the two notes sued on by him, constitute a bar to complainant's relief as respects them. Said Shorter, in his answer, states, " that he was induced to pay a valuable consideration for the notes in his hands mainly because the complainant, at no time in his various interviews with this defendant, made any objection to their payment on the ground of fraud or mistake, but promised faithfully to pay this defendant the full amount of said notes." It appears from the whole case, that Shorter was fully apprised of the consideration of these notes, and the condition of the sale. He moreover knew the land was not paid for, as he transferred the notes given for the purchase money to T. W. Smith & Co., and advised Woodruff to execute the mortgage for their security. He

witnessed the bond to Griggs from P. Woodruff, and the guaranty by Carnot W. He executed the indemnity to complainant against the mortgage, at the request of the Woodruffs, and not as is supposed in consideration of a transfer of the notes to him, and being thus acquainted with the circumstances, we must intend he received the notes subject to all the equities between the original parties. Besides, his answer in this particular is responsive to no allegation in the bill, but is in avoidance, and should have been sustained by proof. There is no proof to sustain it, and according to the well established rules of equity, it cannot prevail. Lucas v. Bank of Darien, 2 S. 280; Forrest et ux v. Roberson, 2 Ala. Rep. 215; Briggs v. Pennyman, 8 Cow. 387; Clarke et al v. White, 12 Peter's Rep. 178. In Glover v. Smith, 1 Des. 433, where land was sold, for which the purchaser gave his bond, and it was afterwards discovered that there was a great deficiency in the quantity of the lands, the purchaser was allowed to have his contract rescinded, although the bond had been passed into the hands of an innocent third person. So also in Andrews & Bros. v. McCoy, 8 Ala. Rep. 920, it is decided, that the equity which attaches upon an assignment of a *chose in action*, is one which inheres in, or grows out of the subject matter of the contract; as where there was a warranty against incumbrances upon a sale of land, an inchoate or latent equity would attach to the notes executed for the purchase money, and would be enforced against an assignee of the vendor, when the equity became perfect by a breach of the warranty, and the insolvency of the vendor. We think it clear, that under the circumstances of this case, the interest of James H. Shorter in the notes interposes no barrier to the complainant's relief.

In the view we have taken of this case, we have not noticed another ground of equitable relief brought to the notice of the court by the amended bill, which is, that since the institution of the suit, the complainant, by actual survey, has ascertained for the first time, that instead of seventy-five acres of hammock land, there are really two hundred acres which were shown by Herring, and which are not included. The proof of Jones and young Griggs, substantial-

ly sustains this averment as to the deficiency and misdescription.

It is however needless to pursue the investigation of this proposition, or to extend this opinion further. In view of the whole facts and circumstances of the case, we feel well satisfied, that the decree of the chancellor is erroneous. It is therefore reversed, and the cause remanded, that a reference may be had, to ascertain the amount of purchase money paid by the complainant, and interest thereon up to the time of taking the account. Also, the value of the improvements made by the complainant and the value of the rents and profits of the land. This being done, the chancellor will decree a rescission of the contract, placing the respective parties as near as may be, in *statu quo* by ordering the money paid to be refunded, and perpetually enjoining the collection of the remainder of the purchase money. Also, decreeing a lien on the land for the amount due from T. W. Smith & Co., and upon the equity of redemption of Philo and Carnot Woodruff, for the amount which may be found due from them to complainant, charging said Woodruffs with the value of the permanent improvements made by complainant, under the purchase on said land, and deducting from the amount of their indebtedness, the value of the rents and profits. Let Philo and Carnot Woodruff pay the cost of this court and of the chancery court.