# EUGENE B. MYERS

*v.*

# EUGENE L. GROSS *et al.*

1.  CONTRACT *for the sale of an edition of books—construction thereof.* A publisher of a book entered into a contract with a bookseller, by the terms of which the latter was to advertise the book in his circulars and lists, for which, and for his commissions on all sales made by him, he was to receive twenty per cent · of the gross receipts, to be deducted month by month, at which times he was to account and pay over to the publisher the residue. It was also agreed that the bookseller should sell the entire edition, the publisher reserving "the privilege of selling at retail what few copies might be demanded through him, without commissions to the bookseller." It was *held*, that while it was for the jury to say, from the number of the edition and all the circumstances of the case, what number should be regarded as a "few copies," which might be sold by the publisher without commissions to the bookseller, it could not have been intended to embrace in the reservation so large a proportion of the edition as to·exceed one-third thereof.

2.  Nor had the publisher the right, under the contract, to advertise the book and solicit orders for its sale,—that was clearly prohibited, by the spirit, if not by the letter of the contract.

3.  Should the publisher, in such case, sell at retail more books than he was authorized to sell under the agreement, the bookseller would be entitled to his commissions on the residue the same as if he had sold the books himself.

4.  It seems, after the making of this contract, by an understanding between the parties, a bill was introduced in the legislature, providing for the purchase, by the State, of a certain number of copies of the book. The bill, as originally drawn, provided that the books should be purchased from the bookseller, who agreed with the publisher to accept half commission on the books to be sold to the State. Subsequently the publisher procured the bill to be so amended that the books should be purchased directly from him: *Held,* this change in the law did not operate to deprive the bookseller of his right to his commissions on the sale to the State, as it did not matter, under their agreement, by which of the parties the books were furnished.

5.  RESCISSION OF CONTRACT *for non-performance.* A party to a contract who is himself first in default, can not declare the contract at an end by reason of non-performance by the other party.

6. So, in this case, the publisher violated the contract by refusing to account to the bookseller for his commissions on books sold beyond the number the former was authorized to sell under the contract, and thereby the bookseller was justified in refusing to pay the drafts of the publisher for proceeds of sales he had made himself, without forfeiting his right to have the contract fully executed.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

Mr. J. V. LE MOYNE, for the appellant.

Messrs. BECKWITH, AYER & KALES, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellees, in the Superior Court of Cook county, against appellant, to recover a balance on the sale of books by the latter for the former. The declaration contained a special, and the usual common counts. The cause being at issue, was submitted to the court for trial, by consent of parties, without the intervention of a jury. After hearing the evidence, the court found the issues for appellees and assessed their damages at $1,169.36, and rendered a judgment therefor in their favor; and defendant prosecutes this appeal from that judgment.

On the 17th day of July, 1868, the parties entered into a written agreement by which appellant, who was a bookseller, bound himself to advertise the book, which was a compilation of the statutes of Illinois, in his circulars and lists, such as might be needed to sell the same promptly, for which, and for his commissions, appellees agreed to pay him twenty per cent of the gross receipts from all sales he should make, to be deducted month by month, at which times he was to account to, and pay over to appellees, the remaining eighty per cent of the proceeds of all such sales. It was agreed that appellant should sell the entire edition at the price of $8 per copy, which was subsequently raised to $10, and to have his imprint thereon as publisher. It was further agreed, that "Gross Brothers reserve the privilege of selling at retail what few copies may

be demanded through them, without commissions to Myers;" and the expense of boxing the books and transporting them to Chicago, was to be equally shared between the parties.

The agreement does not name the size of the edition that was being published, and to which it referred, but it states it to be a contract in reference to an edition of the statutes of Illinois, which appellees then had in press. It is conceded that the agreement referred to the first edition, and the evidence shows that it consisted of one thousand volumes, but it seems it was increased some forty copies. This, then, fixes the number that was embraced in the contract. The difference between the parties seems to have grown out of the sales by appellees to individuals and the State, upon which appellant claims commissions, and which appellees insist he is not entitled to under the agreement. Of the one thousand and five copies which appellees admit were printed, two hundred and ninety-four were sold to the State, and of the remaining seven hundred and eleven, appellant sold three hundred and sixty-two, leaving three hundred and forty-nine unaccounted for, unless they were sold by appellees. Should appellant's claim that appellees account to him and pay commissions on the copies sold by appellees, be allowed? Appellant was entitled, by the terms of the contract, to sell, and receive commissions on, the entire edition, except the few copies that might be demanded of appellees, upon which he was to receive no commission. We can not presume appellant for a moment supposed that the expression, "a few copies," could be construed to embrace so large a number. It is a question for the jury to say, from the size of the edition, and all the circumstances of the case, what number should be regarded as a few copies. But it is manifest that appellees could not sell, under that reservation, over one-third of the edition. Nor had they, under the agreement, any right to advertise the books for sale, and solicit orders for their sale. This is clearly prohibited by the spirit, if not the language, of the contract. This calculation is based on the number appellees admit the edition contained,

but other evidence places it at a higher number ; but the true number published, is for the jury to determine.

It, then, follows that appellees, by selling at retail more than the contract authorized, violated the agreement. It is apparent that they had sold, or made some other disposition of the books, at the time of their last interview with appellant, as they then informed appellant that there was not enough of the edition to supply the State the five hundred copies it had authorized the Secretary of State to purchase. And we find this to have been true, as not quite three hundred were, in fact, delivered, and they were then distributing them among the members of the general assembly. It thus appears that appellees had broken their part of the contract, as they had made these sales and had failed to account to appellant for the commission which he was entitled to receive on such sales as though sold by himself. Even admitting that appellant remitted his commissions on one hundred and thirty-three copies thus sold, as appellees contend he did, still it would leave two hundred and sixteen copies sold by them upon which they have paid no commission, if we take the lowest number which they claim was published. This being the case, they were not in a position to declare the contract at an end. A party, when in default, has no power to say the contract is at an end, and refuse to proceed with its execution. As appellees had violated the agreement, and had failed to account for commissions of appellant, in their hands, when they drew upon him and he refused to pay, they had no power, for that reason, to declare the agreement at an end.

We now come to the question, whether appellant was entitled to any commission on the two hundred and ninety-four copies, sold to the State, of that edition. Appellant had the power to prevent a sale to the State, unless he should get his regular commission under the agreement; but it seems he agreed to take half commission on such a sale, if it could be effected, at the time the bill was introduced authorizing the purchase to be made of appellant. We fail to find that he

ever agreed to reduce the amount, or to remit his claim for half commission on that sale. Nor could the change of the bill, as it finally passed, authorizing the purchase to be made from appellees, in the slightest degree affect his rights. If it was understood that he was to have half commissions for a sale under the bill as first introduced, we are at a loss to perceive any rule of law by which he lost the right when appellees had the bill amended so as to authorize them to make the sale. The purpose and object of the parties was to make the sale to the State, of that edition, and it could not matter in the slightest degree which formally consummated it. On its being accomplished in either form, appellant had the right, when payment was made, to receive ten per cent on that sale.

The court below excluded both the item for commissions over and above a few copies sold by appellees, and not remitted by appellant on their settlement, and the item of ten per cent on the sale to the State. In this there was error. The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*