[Civ. No. 3253. First Appellate District, Division Two.—March 22, 1920.]

BERNARDINO DE BAIROS, Appellant, v. JACOB J. BARLIN, Respondent; E. B. & A. L. STONE COMPANY (a Corporation), et al., Cross-defendants and Appellants.

[1] VENDOR AND VENDEE—DEFICIENCY OF FRONTAGE—MATERIALITY OF INDUCEMENT.—In this action involving the sale and purchase of certain lots which contained a frontage of two and one-half feet less than the contracts called for, the finding of the trial court that the deficiency was material was warranted under all the facts and circumstances in evidence; and from the direct evidence of the vendees that they would not have bought less than the front-

1. Right of purchaser of land to rely upon representation of seller as to boundaries, note, 14 L. R. A. (N. S.) 1210.

age called for by their contracts, and that the lots were too small even at that measurement, the court was justified in concluding that this was a material inducement for entering into the contract.

[2] ID.—COMPENSATION FOR DEFICIENCY—INABILITY TO MEASURE—RESCISSION.—The representation as to the frontage of the lots having been a material inducement for entering into the contract for their purchase, and the deficiency not being capable of exact and entire compensation, the vendees, under the provisions of section 1690 of the Civil Code, were entitled to rescind.

[3] ID.—MISREPRESENTATION AS TO FRONTAGE—FRAUD.—Under section 1573 of the Civil Code, the vendors were guilty of fraud in misrepresenting the frontage of the lots, it having been their duty to inform themselves correctly regarding the boundaries of the lots they were seeking to sell.

[4] ID.—WAIVER OF DELINQUENCIES—DISCOVERY OF MISREPRESENTATIONS—RESCISSION.—If, notwithstanding the vendee was delinquent in his payments at the time of the attempted rescission, the contracts were in full force and effect, the vendors having waived the provision that time was of the essence of the contracts, the vendee was entitled to rescind upon discovery of the misrepresentations.

[5] ID.—MOTIVE IN RESCINDING IMMATERIAL.—The motive of the vendee in rescinding may not be inquired into when he has a legal reason for rescinding and relies thereon.

[6] ID.—ADJUDICATION OF RIGHTS BETWEEN DEFENDANTS—WAIVER BY FAILURE TO REQUEST—APPEAL.—Where the vendor and his assignee joined in one answer to the complaint of the vendee and did not ask the trial court to litigate the matter of their rights as against each other, and thereafter they joined in the notice of appeal from the judgment in favor of the vendee, neither appealing from the judgment as between themselves, argument cannot be made on such appeal that their rights are not adjusted between themselves in the decree of the trial court.

[7] ID.—ACCEPTANCE OF OVERDUE PAYMENTS—RIGHT OF FORFEITURE WAIVED—CONTRACT UNCHANGED.—While acceptance of overdue installments of the purchase price, on an executory contract for the sale of land, waives any right to declare a forfeiture on account of the previous failures to pay when due, such acceptance alone does not change the terms of the contract as to forfeiture for future failures, nor eliminate the provisions that time is of the essence of the contract. (Opinion of supreme court on denial of hearing.)

2.   Mistake in quantity of land as ground for rescission of sale, note, 4 **Ann. Cas.** 52.

[8] ID.—DEFAULT BY VENDEE—WAIVER OF RIGHT TO RESCIND ON VEN-
DOR'S BREACH.—The rule that the vendee is not entitled to rescind
while he himself is in default by nonpayment of installments due
on the purchase price applies only to cases where a rescission is
sought or claimed by one party to an executory contract on the
ground of a breach of the contract by the other party. (Opinion
of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of
Alameda County. Joseph S. Koford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Raymond Perry for Appellants.

W. E. Rode for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff and
cross-defendants from a judgment against them in an action
by which Bernardino de Bairos, as assignee of the other
cross-defendants, sought to recover from the defendant $1,-
069.65, the sum of unpaid installments under three contracts
for the sale of real property. Under these contracts, cross-
defendants, E. B. & A. L. Stone Company and Jennie F.
Stone, are vendors, and the defendant is the vendee of a
parcel of land in a subdivision of Stonehurst, Brooklyn
township, Alameda County, California. Title to said prop-
erty was not to be transferred until all of the payments
provided by the contracts had been made.

Defendant answered, denying that the installments were
due, and alleged that, by mutual mistake of fact, there was
a deficiency of two and one-half feet in the total frontage
called for by the three contracts, and that he had rescinded
the contracts. He also alleged that, because of said defi-
ciency in said lots, plaintiff could not convey in accordance
with the contracts, and that the contracts were not fair, just,
and equitable in their terms, but, on the contrary, the pur-
chase price provided therein was grossly in excess of the
reasonable and fair value of the lots. He also alleged that
plaintiff was suing for the balance due upon the full pur-
chase price of the lots and had never tendered a deed to de-
fendant. In his cross-complaint, defendant set up the same
facts regarding the mistake in the frontage on Pearmain
Street, and alleged actual fraud and fraudulent representa-

tions, as well as a want of consideration, predicated upon said facts; and, in an additional count, prayed for a return of the money paid under the contracts as money had and received by the cross-defendants. The cross-defendants answered, admitting an error in the description, creating a deficiency of two and one-half feet; denied knowledge of this at the time of the sale; denied fraud and want of consideration, denied defendant's right to rescind and offered to allow such rebate as the court might deem equitable on account of the deficiency of two and one-half feet.

The court found that the three contracts sued upon constituted a single transaction. The contracts were entered into on June 10, 1910. The vendors had been the owners of an entire tract, including the lots sold to the defendant, and had platted and subdivided this tract into lots. Prior to the sale to defendant, plaintiff's assignors had had two surveys and plats made of this tract. These maps or plats were introduced in evidence. It appears that they are alike in the general platting—the difference between them being that on the first map Plum Street (also called One Hundred and Seventh Avenue) is shown as two and one-half feet southeast of its location on the second map, so that the block of land, of which defendant's purchase formed a part, is two and one-half feet longer on the first map than on the second map, and lots numbers 84 and 85 of said tract (being the lots at the corner of Plum and Pearmain Streets) are shown with a frontage of eighty feet on the first map and seventy-seven and one-half feet on the second map.

One Hundred and Seventh Avenue, or Plum Street, was laid out and the street work and gutters, curbs, etc., were placed in accordance with the second map. This work, including the cement walks, extended up to the property line and was almost completed on June 10, 1910, when the defendant entered into his contracts. The difficulty arises by reason of the fact that the vendors had arrows stamped in the cement walks as monuments indicating the lot lines and these arrows were stamped in accordance with the first map. The result was that lots 84 and 85, purchased by defendant, were shown by the arrows placed in the sidewalks to have a frontage of eighty feet on Pearmain Street. Neither of the maps were recorded. The description of the property in the contracts was by courses and distances, and, on its

face, conveyed eighty feet on Pearmain Street. The testimony of the surveyor was, however, that if this description were followed, it would lead to a point two and one-half feet across the line of One Hundred and Seventh Avenue.

The testimony of the defendant and his wife is that when they went to look at the property with the agent of the vendor, they were shown the arrows in the cement walk, which indicated that the property had a frontage on Pearmain Street of eighty feet by a depth of one hundred feet along One Hundred and Seventh Avenue, the depth being indicated also by an arrow.

With respect to the finding that the three contracts were entered into as one transaction, there appears the testimony of defendant's wife that they bought the entire property (supposedly eighty feet) as one piece, and then asked the agent if he would divide it up in the contracts so that one lot would have thirty feet frontage and the other two would have a frontage of twenty-five feet each and could be held by them for their sons, who were at that time children. The boys had nothing to do with the purchase and never paid any part of the consideration, and it was merely the idea of the mother, after the purchase had been decided upon, that portions of the land should be held by the father for the boys. The testimony of the defendant was to the same effect. Both testified, also, that they really wished a larger lot than the one they thought they were purchasing, but not being able to secure an additional five or ten feet, took what was represented to them as eighty feet. They testified that the lots scarcely would be large enough to meet their requirements if they were as represented, and that they would not have purchased them if they had known that they were only seventy-seven and one-half feet in the aggregate.

[1] Of course, the question of what is a material difference between the actual and represented description of land is a question of fact and varies with the circumstances and the uses of the land and the size of the parcel being sold. There was some evidence in the record which, appellants insist, indicates that the discrepancy was not material in the present case, because of the use of the land contemplated by the defendant. There are other considerations, however, which evidently weighed with the trial court in making its findings upon this point. The defendant testified that he

thought the lots were in a section which would develop and improve rapidly; that the agent so stated to him and that the agent also stated that in a short time trains would run every hour from East Fourteenth Street to Stonehurst Station. The use to which such a lot may be put in the future is uncertain. The defendant may have had an idea at the time of purchasing of using the place as a home, but he was not bound by that intention. It was his privilege to use the lot in any manner that might be most profitable at any later date, or to sell the same for use by others. There might be many uses to which an eighty foot lot could be put which would not be equally well met by a seventy-seven and one-half foot lot. The sale value of such a lot might be materially different if it contained eighty front feet than it would be if it contained only seventy-seven and one-half feet, and the difference in value, we think, would not be a matter of exact measurement. The appellants' main argument upon this question is that because the defendant testified that he thought when he got old he might build a home on the lot and have a garden and chickens—therefore, it appears that the smaller lot would serve such purpose as well. The value of one's property certainly cannot be fairly estimated without taking into consideration the ever-present possibility of sale. We think, therefore, that the finding of the court that the deficiency was material is warranted under all the facts and circumstances in evidence. From the direct evidence of the defendant and his wife that they would not have bought less than eighty feet; that the lots were too small even at that measurement, the court was justified in concluding that this was a material inducement for entering into the contract. [2] We think the deficiency was not capable of exact and entire compensation, and the right of the defendant to rescind under such conditions is recognized in section 1690 of the Civil Code.

[3] The court found that the vendors had been guilty of fraud in misrepresenting the frontage of the lots. Constructive fraud is defined by our code as "any breach of duty which without an actual fraudulent intent gains an advantage to the person in fault . . . by misleading another to his prejudice." (Sec. 1573, Civ. Code.) It was certainly a breach of the vendor's duty not to inform himself correctly regarding the boundaries of the land he was seeking

to sell. Furthermore, it appears that the vendor had in its possession at that time the two maps, which gave different measurements for this property, and it was its duty to become aware of this fact and to investigate and ascertain the truth before making any representations in regard thereto. It had at hand the means of ascertaining the truth, and defendant did not have, because the maps were not recorded. Furthermore, it appears in the record by the testimony of R. P. Macdonald, secretary of E. B. & A. L. Stone Company, that the two maps were made and that there was a change in the second map, and that the attention of the company was called to this about two years later, at which time the company wrote to the surveyor asking for an explanation. They received no reply, and, evidently, nothing more was done about it. Thereafter, for several years, with actual as well as constructive knowledge of the discrepancy, the vendors continued to demand payment of the full purchase price from the defendant and to receive partial payments thereon, and made no allowance for or explanation of the discrepancy, and charged interest and compound interest upon their books against the defendant upon the entire purchase price. Indeed, the vendors made no attempt in any way to remedy the mistake until the defendant discovered the facts and rescinded the contracts, which was after the commencement of the present action, by which it was still sought to enforce the payment of the purchase price agreed upon for eighty feet of land.

[4] Another question argued by appellants is that the defendant may not rescind because he was delinquent in his payments due under the contracts at the time of the attempted rescission, and that he must fully perform his part of the contract in order to come into equity with clean hands. It appears that the vendors accepted overdue payments from time to time under the contracts, and thus waived the provision that time was of the essence of the contracts. They have not terminated the contracts because of defendant's default, but, on the contrary, they have considered the contracts as in full force and effect, and have sued to recover the installments due thereunder. If they keep the contracts alive by their own election, they must keep them alive for all purposes, and bear their burdens as well as accept their benefits. If the contracts were in full force

and effect, and a mistake had been made in a material fact which was their inducement, they could be rescinded. The evidence is that defendant rescinded promptly after discovery of the misrepresentations.

[5] Appellants urge that the real reason why the defendant desires to rescind is that at this time he has not the money necessary to make his payments. The courts have held that the motives of the vendee in rescinding may not be inquired into when he has a legal reason for rescinding and relies thereon. (*Cabrera* v. *Payne,* 10 Cal. App. 675, 678, [103 Pac. 176]; *Crim* v. *Umbsen,* 155 Cal. 697, 702, [132 Am. St. Rep. 127, 103 Pac. 178].)

The deed from Stone Company by which the plaintiff acquired his interest in the property in controversy was introduced in evidence. The court found this deed to be in fact a mortgage. This finding was based upon the following clause in the deed: "This deed is given to secure cash advances of $761.72, the amount of the consideration hereinbefore named on the property hereinbefore named." There were also in evidence assignments of the contracts sued upon, which assignments recited that the interests of the assignors in the contracts and in the property covered thereby were transferred to the assignee, the plaintiff here. Appellants contend that even though the above-quoted clause in the deed may have raised a doubt as to the character of the deed, that the assignments nevertheless conveyed the title to the property absolutely, and that a consideration of both instruments together leaves no doubt as to the intention of the parties that the full and indefeasible title, subject to the contracts of purchase, should be conveyed. The holding of the court that the deed was in reality a mortgage only affects the rights of the cross-defendants among themselves. It does not affect the rights of the defendant and cross-complainant, who is the respondent here. The Stone Company is objecting because it asserts that it has, by this deed, transferred title to the property in controversy to the other appellant, de Bairos, and that by the decree of the court, the contracts being rescinded, de Bairos will have the title to the property, free of the lien of the contracts, and Stone Company will be compelled to return to the defendant the money paid by him, and thus Stone Company will be out both property and money. But the appellant Stone

Company, for these very reasons, should not object to a finding of the court which is consonant with the protection of what it asserts are its rights; for, under the holding of the court that this deed was merely a mortgage, the equity in the property would be in Stone Company, and upon the payment of the advances made by de Bairos, Stone Company would have the full and free title. Argument cannot be made upon this appeal that the rights of the cross-defendants are not adjusted among themselves in the decree. [6] The cross-defendants joined in one answer and did not ask the court to litigate the matter of their rights as against each other. They joined in their notice of appeal from the judgment for the defendant. Their respective rights are matters in which the respondent is not concerned in any way. The cross-defendants should have asked, if they desired, a determination of their respective rights among themselves, and the one considering himself aggrieved by such determination should have appealed therefrom, making the other cross-defendant a respondent. The respondent here has no interest in defending the right of either against the other. In so far as the judgment affects the respondent it is proper. He recovers his money from the parties to whom he has paid it; his contracts are rescinded and the title of the property, which never vested in the defendant, is left either where it was before the contracts were entered into, or where the cross-defendants by their own conveyances have placed it since that time.

The judgment is affirmed.

Nourse, J., and Brittain, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 16, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1920, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in this court is denied.

The opinion of the district court, in answer to the appellants' proposition that the defendant was not entitled to

rescind the contract while he was himself in default by non-payment of installments due on the purchase price, says that "the vendors accepted overdue payments from time to time under the contracts, *and thus waived the provision that time was of the essence of the contracts.*" (Italics ours.) The language we have italicized is not a correct statement of the law without further qualification.

[7] Acceptance of overdue installments of the price, on an executory contract for the sale of land, waives any right to declare a forfeiture on account of the previous failures to pay when due. But such acceptance alone does not change the terms of the contract as to forfeiture for future failures, nor eliminate the provision that time is of the essence of the contract. There may be conduct and acquiescence by the vendor sufficient to *justify the inference by a court* as a matter of fact that the vendor has waived the conditions of a contract regarding a forfeiture, which he afterward claims the right to enforce, and when in such a case the waiver has continued until after all installments are due, the condition cannot be revived except by notice to the vendee. (*Boone* v. *Templeman,* 158 Cal. 296, [139 Am. St. Rep. 126, 110 Pac. 947]; *Stevinson* v. *Joy,* 164 Cal. 285, [128 Pac. 751]; *Hoyt* v. *Bentel,* 164 Cal. 684, [130 Pac. 432]; *American etc. Co.* v. *Butler,* 165 Cal. 519·; [Ann. Cas. 1916C, 44, 133 Pac. 280]; *Myers* v. *Williams,* 173 Cal. 304, [159 Pac. 982].) But none of these cases holds that such waiver is absolute, or that the provision cannot be revived and a forfeiture produced by a notice requiring performance within reasonable time.

[8] The true answer to the proposition of appellants, above stated, is that the rule it invokes applies only to cases where a rescission is sought or claimed by one party to an executory contract on the ground of a breach of the contract by the other party. All the cases to that effect are of that character. (*State* v. *McCauley,* 15 Cal. 458; *Fairchild etc. Co.* v. *Southern etc. Co.,* 158 Cal. 273, [110 Pac. 951]; *Duncan* v. *Jeter,* 5 Ala. 604, [39 Am. Dec. 342]; *Hatton* v. *Johnson,* 83 Pa. St. 222; *Myers* v. *Gross,* 59 Ill. 436; *Seymour* v. *Bennett,* 14 Mass. 266.) We know of no case which holds that such rule applies to a case where the vendee in default on payments due on the contract seeks to avoid and rescind it for fraud of the vendor in procuring its execution,

or for mistake inducing its execution. Payment by the vendee, after discovery of the fraud or mistake, might tend to show a waiver thereof, and thus defeat an attempted rescission, but a refusal to pay would be entirely consistent with the right of the vendee to rescind for such cause.

Shaw, J., Angellotti, C. J., Lennon, J., Lawlor, J., Wilbur, J., Sloane, J., and Olney, J., concurred.