CHINNUBBEE *versus* NICKS, et al.

QUESTION IN THIS CASE.

*Relative to lands of which an Indian widow is dowable.*

1. The widow of an Indian is not dowable of lands, selected by the husband, under the Treaty between the United States and the Creek tribe, of the 24th March, 1832, and by him conveyed, in conformity with that treaty, to a purchaser.

This was a proceeding, instituted in Talladega Circuit Court, by the plaintiff in error, the widow of General Chinnubbee, a Creek chieftain of that tribe; on a claim of dower.

The land, of which the plaintiff prayed to be endowed, had been selected by her husband, in conformity with a provision of the treaty, entered into, on the 24th March, 1832, between the United States and the Creek tribe of Indians. General Chinnubbee, after the selection, conveyed to the defendants in error, all his right title and interest in the lands so selected, and the contract was duly certified and approved, as required by the articles of that treaty.

The Circuit Court, on the facts, dismissed the petition, and Chinnubbee, the wife, brought the cause, on error, into the Supreme Court.

The only question raised and determined, was, whether General Chinnubbee held an estate in the lands selected under the treaty, of which his widow was dowable.

The case was argued by *Mr. P. Parsons* and *Mr. Chilton,* for the plaintiff in error; and by *Mr. Mardis,* for the defendants.

HOPKINS, J.—This was an application of the plaintiff in error for dower, as the widow of Chinnubbee, who was a chief of the Creek tribe of Indians.— That she was his wife, at the time of his death, was admitted by the defendants, in the suggestion of her want of the right she claimed, which they filed in the Circuit Court, to which she made her application, and has not been questioned in this Court, by their counsel. The land in which dower in this case is demanded, is a selection that was made by Chinnubbee, in his life-time, under the treaty between the United States and the Creek tribe of Indians, dated the 24th March, 1832. On the 10th September, 1834, he conveyed by his deed, all his right and interest in the land, to the defendants, and the proper agent, on the same day, made his certificate, upon the deed, that the price paid by them, was the full value of the land.

On the 15th October, 1834, Chinnubbee died, and on the 1st November, in the same year, the President of the United States approved of the contract.

Several questions, arising from the treaty, were argued, which ought not to be determined, till a case shall be made, with parties to it, interested in them. But so much of the treaty as need be considered, to ascertain the quantity of interest, which the husband had in the land, must be construed. Her counsel contended that he acquired a fee simple in it, as soon as the selection was made.

Before the treaty was made, the fee simple, in all

the land embraced by it, belonged to the United States, and the right of occupancy to the Indians. The right of occupancy to no part of it, could have been sold by any individual of the tribe. The power to dispose of it, was in the tribe, and limited, when exercised, to a sale of it, to the United States. The treaty discharged the fee which the United States previously owned, of that right of occupancy. That Chinnubbee was vested, by the making of his selection, with a fee simple in the land, is a proposition to which several provisions of the treaty are opposed. One of them, required the land selected, to be reserved from sale for his use, for the term of five years, unless sooner disposed of by him, and if he conveyed it during the term, by a contract certified by an agent, appointed for the purpose, and approved by the President; that a title should be given by the United States, on the payment of the purchase money, to the purchaser.

The fifth article provided, that all the Creeks, at the end of five years, entitled to selections, and desirous of remaining, should receive patents therefor, in fee simple, from the United States.

If it were intended, that he should acquire a fee simple, by selecting the land, why did the United States agree to give, and he to accept, another grant of title, at a subsequent time, to the same land? If he could, in this mode, be vested with an estate in fee, how could the United States discharge the obligation, they have contracted, in the most solemn form, to grant the same estate to an approved purchaser from him? The engagement of the United States was either to grant the fee simple to him, or to an approved purchaser from him, should he sell

CHINNUBBEE *vs.* NICKS, et al.

the land before he became entitled, according to the terms of the treaty, to a patent, himself.   He had his election, either to acquire the fee himself, or to receive the value of the land, and the title was left in the United States, and might be retained during the whole time allowed for him to make his election, to enable them to convey it, according to his election.   He preferred the value of the land, and has received it.   The effect of his preference is to give him the same right, under the treaty, that he would have, if it had bound the United States to pay him the sum which he has received from the purchasers, and allowed him no selection.   The purchasers derived no title from his deed to them, but they are entitled to a patent from the United States.   The only effect of their contract with him, was to terminate the alternative he previously had, and give them the right to the obligation into which the United States had entered, to convey the title to whoever might become an approved purchaser from him.

The approval of the contract, by the President, after the death of Chinnubbee, could be properly given.   He did, in his life time, all that was required of him.   When he delivered it, nothing was necessary to complete it as a contract.   The approval, when given, was no part of the contract, but the opinion of the President, that the contract of Chinnubbee, was valid.   This opinion of the President, like the proof and registry of deeds, in States where these are necessary, in addition to a deed, to convey a title, has the same effect, when pronounced after, as before the death of the vendor.   Had the contract been disallowed, the alternative would have been again in Chinnubbee, and the title in the United

States, as it was before the contract, charged with an obligation to convey it, to whoever the exercise of the alternative might show to be the proper person. The form of the contract has not been prescribed, and is immaterial. Regardless of the form, the effect of every approved contract is the same. It gives a right to the purchasers, to the obligation of the United States, to convey the title to them. This right and not the title, was all the defendants did or could have acquired from the husband of the plaintiff.

The defendants do not, therefore, in opposing the application for dower, deny the title of their grantor. Were we mistaken in the view we have taken, there is another, which will show that the husband of the plaintiff had no such estate as she is dowable of.— The selection and reservation of it, for his use, from sale, for the term of five years, accompanied by power to him to sell, can not give him any other than a defeasible fee—a qualified one, which must yield to the estate, which he was authorised to create, by the execution of the power given to him, to sell.

It is well settled, upon authority, that if there be a grant to one and his heirs, to such uses as he should appoint by deed or will; and for want, or in default of, and in the mean time, and until appointment, to the use of himself, his heirs and assigns, forever; and he make an appointment in fee, his wife has no right of dower. Before such an appointment, he would have a vested fee, and be seized in fee, until appointment. Should he die before such an appointment, his wife would be dowable. But her right would be destroyed by an appointment: when made, the appointee would take the title, as if the original

CHINNUBBEE *vs.* NICKS, et al.

conveyance had been made to himself. The question, whether the grantee conveyed his own estate, or executed his power, which sometimes arises, in cases of this class, does not arise, in the one before us.

The contract of Chinnubbee, without the proper certificate of the agent, and the approval of the President, could have no effect. The certificate and approval were required by the treaty, to prevent a sale, upon an inaedquate consideration; and they show that the contract was made in execution of his power.[a]

Let the judgment be affirmed.

COLLIER, J., not sitting—having presided below.

[a] Sug.on P. 148–9, 151, 335,337–8–9; 10 Ves. 263; 6 East 288