JONES and PARSONS' heirs vs INGE and MARDIS' heirs.

*Questions as to the construction of the Creek treaty of 1832.*
*Of recitals in a patent—how far evidence.*

1. A patent cannot be considered as conveying any interest to the grantee, anterior to its date.
2. But a patent may be shown to be connected with, and to relate back to a previous inchoate legal title.
3. Under the Creek treaty of 1832, an Indian reservee, when his land had been selected and set apart, by location, became entitled to the possession, until disposed of by him according to the terms of the treaty, or voluntarily relinquished or abandoned.
4. And this right to the possession, was a legal estate, which could have been enforced in a Court of law.
5. By the provisions of this treaty, the Indian was authorised to convey his title and interest in the selected land, with the approval of the President of the United States.
6. And after such approval, the contract of conveyance became valid, vesting in the grantee, all the estate vested in the Indian by the treaty, and his location.
7. The action of the President of the United States, in relation to these contracts, is final and conclusive; and precludes any inquiry in a collateral way, into the identity or capacity of the Indian, parting with his interest, unless in a suit, in which one of the parties claims, under or through him.
8. And how far such latter party might be permitted to contest the recitals in a patent—*quære*.
9. But a mere stranger has no right to enquire if the recitals in a patent, be true or false.
10. So the recitals in a patent do not operate, so as to give a right of action, antecedent to its date.

11. And where, for the purposes of a suit, it becomes necessary to connect the recitals in a patent, with an antecedent estate, the titles to such an antecedent estate, must be produced.

This action was trespass to try titles, determined in the Circuit Court of Talladega county.

The case was commenced on the twenty-fifth day of August, eighteen hundred and thirty-five, in the name of Samuel W. Mardis and William M. Inge, who sought to effect a recovery against Parsons and Jones, of a tract of land, known as the east half of section four, in township nineteen, of range five.

The pleas of the defendants were, not guilty, and upon them, a verdict was rendered for the plaintiffs.

A bill of exceptions taken in the progress of the case, disclosed—that the plaintiffs in the action, produced, and proposed reading in evidence, a grant of the land in dispute, issued by the President of the United States, to Ansel Sawyer; which grant was dated on the twenty-ninth day of February, in the year, one thousand, eight hundred and thirty-six.

The grant recited, that whereas Hogillis-i-nihaw, one of the Creek tribe of Indians, by virtue of the treaty, between the United States, and the said Creek tribe of Indians, made the twenty-fourth day of March, eighteen hundred and thirty-two,—became entitled, out of the lands ceded to the United States, by the said treaty,—to the east half of section four, in township nineteen, of range five, east; which said tract, with the approbation of the Pres-

ident of the United States, had been duly sold, and conveyed by said Hogillis-i-nihaw, to Ansel Sawyer—which appeared by the conveyance thereof, dated the seventeenth day of January, eighteen hundred and thirty-five, with the approbation of the President, endorsed thereon—dated the first day of February, eighteen hundred and thirty-five:—then in consideration of the premises, said land was granted to said Ansel Sawyer.

To the reading of this grant in testimony, the defendants objected—,on the ground, that it bore date subsequent to the institution of the suit, and because the recitals contained therein, as to the deed from Hogillis-i-nihaw to Sawyer, were not evidence of the facts recited, in said grant. But the Court overruled the objection, and suffered the grant to be read in evidence, deciding, that the recitals contained in the grant, were proper evidence of the facts therein stated.

The plaintiffs then produced, and read in evidence to the jury, a deed of conveyance, of the land in question, from Ansel Sawyer, to themselves, dated the 9th day of June, eighteen hundred and thirty-five. And also, proved a demand and refusal, &c.

The defendants then offered to prove, that the said Hogillis-i-ni-haw, was not the head of a Creek family, either at the date of the treaty, or when the Indians were located: And that he was an infant, at the time he was said to have conveyed the land: Which testimony the Court refused.

To all which the defendants accepted, and took a writ of error to this Court.

5 P.     42.

*Peck* for the plaintiffs in error,—*Chilton,* contra.

GOLDTHWAITE, J.—The plaintiffs in the Court below, on the trial of this cause, shewed in evidence, a patent from the United States to Ansel Sawyer, for the land in controversy. This patent is dated, the twenty-ninth of February, eighteen hundred and thirty-six, and recites, that Hogillis-i-nihaw, one of the Creek tribe of Indians, by virtue of the treaty made the twenty-fourth day of March, eighteen hundred and thirty-two, became entitled, out of the lands ceded to the United States, by the said treaty, to the tract of land, which is the subject of this suit, which, with the approbation of the President of the United States, had been duly sold and conveyed, by the said Indian, to Ansel Sawyer, as appears by the conveyance thereof, dated the seventeenth of January, eighteen hundred and thirty-five, with the approbation of the President of the United States, indorsed thereon, dated first of February, eighteen hundred and thirty-five, deposited by the said Ansel Sawyer, in the general land office of the United States. They then shewed in evidence a deed for the land, from Ansel Sawyer to them, dated the ninth of June, eighteen hundred and thirty-five.

To the introduction of this patent in evidence, the plaintiff in error objected, as it bore date after the commencement of this suit, but the Circuit Court overruled the objection, because the recitals in the patent shewed, that the deed from Hogillis-i-nihaw to Sawyer, was made and approved by the President, before suit brought; and the Court deci-

ded, the recitals in the patent, to be evidence of the facts recited.

The exception of the plaintiffs in error, to the admission of the patent in evidence, and to the opinion expressed by the Circuit Court, as to the effect of the recitals therein contained, are presented by the assignments of errors, for the examination of this Court.

It is insisted, that if the recitals in the patent are to be taken as evidence of the facts recited, yet no legal title was shewn to be in the defendants, when this suit was instituted.

The patent can convey no interest to the grantee, anterior to its date, but it might be shewn to be connected with, and to relate back, to a previous inchoate legal title. Thus, a patent may be shewn to have been founded, on a certificate of entry and purchase, and to be connected with the legal title, created by the act of entry. So in the present case, the patent might be shewn to have emanated from the location of the land, to Hogillis-i-nihaw, if that is to be considered as a legal estate.

So far as the question now presented, involves the consideration of the title, we think that the patent may be entirely placed out of view, for it is clear, that if no legal title was in existence, when it issued, for the land, it could have no effect to support an action previously commenced. But if the recitals are evidence of the facts stated, it was made to appear, that the Indian named, was entitled to a reservation of the land in controversy, under the treaty of eighteen hundred and thirty-two; and that he had, with the approval of the Presi-

dent, conveyed it to Ansel Sawyer, on the seven-
teenth of January, eighteen hundred and thirty-
five. If then the Indian was possessed, of a legal ti-
tle, by virtue of his location under the treaty, and
was capable of transmitting this title to Sawyer,
by conveyance, the defendants in error, did shew
such title to the premises, in dispute, as should ena-
ble them to recover, in the absence of a legal de-
fence.

By the treaty of eighteen hundred and thirty-
two, Indians of a particular description, were en-
titled to a tract of one half section of land, to be se-
lected in the manner pointed out by the treaty, and
the land was to be reserved from sale for their use,
for the term of five years, unless sooner disposed of
by them. All intruders were to be removed from
the reservations, for the term of five years, or until
conveyed to white persons; and at the end of five
years, all the Creeks, entitled to their reservations,
and desirous of remaining, shall receive patents
therefor, in fee simple, from the United States.—
These are the terms used in the treaty, and we can
arrive at no other conclusion, than that the Indian,
after his tract of land had been selected, and set
apart by a location, was entitled to the possession
of the same, until he should dispose of it, according
to the terms of the treaty, or should voluntarily re-
linquish or abandon it; and this right was a legal
estate, vested in the Indian, and could be, by him.
enforced in a Court of law. But although the
Indian may, under the treaty, be entitled to a legal
estate, in his reservation, when located, it may not
follow as a consequence, that he can transfer this

right to another, so as to vest in him, a similar title. The treaty must therefore, again be resorted to, in order to ascertain how far, and in what manner, he may, (if empowered to do so at all,) transmit his estate, or any other estate, to a purchaser under him.

The third article, provides, that these tracts, (reservations allotted to Indians,) may be conveyed, by the persons selecting the same, to any other persons, for a fair consideration, in such manner as the President shall direct. The contract shall be certified by some person, appointed for that purpose by the President, but shall not be valid, until the President approves of the same.

A title shall be given by the United States, on the completion of the payment.

Again, the second article, in speaking of the lands reserved by the Indians,—"which tracts shall be reserved from sale for their use, for the term of five years, unless sooner *disposed of by them.*"

Again, in the fifth article, the right to remove an intruder from the reservation, under the summary mode pointed out, in that article, is taken away, as soon as the lands "are conveyed to white persons."

We do not doubt, that these provisions of the treaty, were intended to authorise the conveyance of the title and estate, which the Indian was entitled to possess and enjoy, and that so soon as the conveyance is rendered valid, by the approval of the President of the United States, the purchaser, or grantee, from the Indian, is entitled to all the estate, which was vested in the Indian, by virtue of the treaty, and his location; and that he is further-

more entitled, under the latter clause of the third article, to receive a title from "the United States, on the completion of the payment."

The case of *Chinnubbee vs Nicks*, et al. (3 Porter, 362,) has been cited, and relied on by the plaintiffs in error. With the decision made in that case, we remain satisfied,—believing the law to be there correctly laid down: but the Court do not attempt to settle, that the reservee has no *legal title*, but merely, that he is possessed of no such estate, as his widow could be endowed of.

See also the case of *Herring vs M'Elderry*, et al. (this vol. 161,) in which it is ruled, that *until approval of the contract by the President*, the purchaser, from an Indian reservee, has no legal or equitable title to the land purchased.

Having thus arrived at the conclusion, that if the recitals in the patent, are to be considered as establishing the facts recited, the defendants in error, did shew such a legal estate, as would enable them to maintain this action, it remains to inquire if the recitals were properly admissible in evidence.

It is not difficult to ascertain the general rule, as to the effect of recitals in deeds of an ordinary description. It is well settled that they may be evidence against him, who executed the deed, or claims under the party.—(7 Comyn. Dig. tit. Testmoigne, B. 5. page 432. *Penrose vs Griffith*, 4 Binn. 231. *Garwood vs Dennis*, id 327. *Morris vs Vanderin*, 1 Dall. 67. *Denn* ex dem *Colden vs Cornell*, 3 Johns. Cases, 174. *Shelly vs Wright*, Willes 9.) But as against a stranger, a recital is no evidence. (7 Comyn. Dig. tit. Testmoigne, B. 5, page 492.)—

And it is generally no proof of the deed recited, for if a patent, or lease be recited, it ought to be proved. (Ibid.) So if a patent be recited to have been surrendered, and the patent be proved by one party, to be in *esse*, the other ought to prove the surrender. (Ibib.) Yet if the recital be relied on to prove the patent, it shall also be proof of the surrender. (18 Viner Ab. 163. Earl of *Montague vs* Lord *Preston*, 2 Vent. 171.)

Such are the general rules:—but it is conceived, that the peculiar situation of the parties interested in the titles and estates, created by virtue of the treaty of eighteen hundred and thirty-two, requires, an essential modification of these rules, as applicable to those estates.

By the treaty, so far as the disposition of any estate in the lands, allotted thereby, is concerned, the Indian is placed under the care and protection of the President, and he supervises and approves every step, taken in relation to a sale or conveyance. He is to direct the manner in which the land may be conveyed. The contract in relation to the sale, is to be certified by some person appointed for that purpose, by him, and it has no validity, until it receives his approval; and finally, a title is to be given by the United States to the purchaser. We cannot resist the conclusion, that it was intended by the parties to the treaty, that the action of the President, on all these matters, was intended to be final and conclusive; at least, so much so, as to preclude any inquiry in a collateral way, into the identity or capacity of the Indian, who is said to have parted with his interest in the land,—unless in a suit,

in which one of the parties might claim under or through him. How far such a party might be permitted to contest the recitals, in the patent, is a question which will not receive a decision, until a case shall be presented with proper parties to require it. A mere stranger, shewing no title whatever, ought not to be permitted to litigate a question, in which he has, and can have no interest. The title can alone be derived from the United States, or from the Indian, with the approval of the President; and if a patent has been issued by the United States, for the land, no other individual than the Indian, has any interest, which can entitle him to controvert the sufficiency of the grant.

But notwithstanding, we have arrived at the conclusion, that a mere stranger has no right to inquire if the recitals in the patent, be true or false, yet the case now to be decided, presents a question which is not affected by this conclusion. At the time when the suit was instituted, the defendants in error, (if the recitals in the patent are in conformity with the facts,) were invested with a title, sufficient to authorise and maintain their action; but this title they do not produce in evidence. The evidence, on which they rely, amounts to no more than an admission, by the United States, that Sawyer, on the seventeenth of January, eighteen hundred and thirty-five, had a legal estate in the land sued for, derived from the Indian reservee; and in consequence, they convey to him, on the twenty-ninth of February, eighteen hundred and thirty-six, the fee, which previously, had remained in them.— This admission cannot so operate, as to give a right

of action, antecedent to the date of the patent.— An analagous case is put in the books, which shews conclusively, that no such effect can be given to an admission. If a lease be recited in a release, yet it is no proof against a stranger, without shewing that the lease is lost. (7 Comyn. Dig. tit. Test-moigne, B. 5, page 432.) Yet the release would be sufficient to pass the estate, from the date of its execution.

So in this case, the patent conveys the fee, from its date, and if it becomes necessary for the purposes of this suit, to connect it with the antecedent estate, the title to such antecedent estate, should have been produced,

The Circuit Court, having ruled, that the recitals in the patent, were proper evidence of the deed, from Hogillis-i-nihaw to Sawyer, pronounced an erroneous opinion, for which the judgment must be reversed, and the cause remanded.

HOPKINS, C. J. not sitting.