### ROSSER *VS.* BRADFORD.

1. An Indian reservee, under the treaty of the twenty-fourth of March, eighteen hundred and thirty-two, made with the Creek tribe of Indians, may sell and convey his land, if the deed be certified by the agent appointed for that purpose, and be approved by the President of the United States, and a good legal title in such case, will vest in the vendee.

Error to Talladega Circuit court.

Ejectment—tried before *Shortridge,* J.

This was an action of trespass, to try the title to a tract of land described in the declaration.    The suit was instituted in Talladega county, the seventh of February, eighteen hundred and thirty-six.    The case agreed, on which the judgment of the Circuit court was rendered, discloses the following facts:

The land in controversy was reserved to one Athlocke, a Creek Indian, by virtue of the second article of the treaty of the twenty-fourth of March, eighteen hundred and thirty-two, made with the Creek tribe of Indians. On the twenty-ninth of April, eighteen hundred and thirty-four, Athlocke sold the land to John Sutherland, for the consideration of two hundred and fifty dollars, and executed a deed, conveying to him all the grantor's right, title and claim.    On the same day, this deed was certified by the agent appointed for that purpose by the President of the United States; and the certificate of this agent states that the money was paid to the said Athlocke, in the presence of the agent.    The contract stated in the deed from the Indian, was approved by the Presi-

Rosser *vs.* Bradford.

dent of the United States, the twenty-fifth of October, eighteen hundred and thirty-four. On the sixteenth of November, eighteen hundred and thirty-five, Sutherland, who never was in the actual possession of the land, conveyed it by deed of bargain and sale, with covenant of general warranty to Rosser, the plaintiff to the action.

Several judgments were obtained against Sutherland in eighteen hundred and thirty-two and eighteen hundred and thirty-three, in the Circuit court of Franklin county, in this State, on which writs of *fi. fa.* were issued within the year, and returned by the sheriff of that county, " no property;" and other *fi. fa's* having been issued, directed to the sheriff of Talladega county, he levied on the land in controversy, as the property of Sutherland, on the twenty-fourth of July, eighteen hundred and thirty-five, and sold the same on the seventh of September, of the same year, to Bradford, the defendant, to whom he executed a deed, conveying all the interest of the said Sutherland in the said land, which he could lawfully convey by virtue of the said writs of *fi. fa.* Bradford, the purchaser at the sheriff's sale, entered in possession of the land on the same day of the sale, and continued his possession when the suit was commenced. The Circuit court, on these facts, rendered judgment in favor of the defendant; and the plaintiff, Rosser, now prosecutes this writ of error to this court, to reverse the said judgment.

*Chilton,* for plaintiff in error.
*Peck,* contra.

GOLDTHWAITE, J.—The regularity of the sheriff's sale and deed to the defendant, is not disputed, or the validity of the judgments and executions under which the levy was made, denied; nor is it pretended that Sutherland acquired any new title, or that any thing occurred to affect the one previously held by him, between the time when the levy was made, and the commencement of this action. These circumstances, naturally enough, would lead to the conclusion, that there was something very peculiar, either in the nature of the title under which the plaintiff seeks a recovery, or that the rules which govern this action, must be very different from those which govern actions of ejectment, because an ordinary *legal* title would have passed from Sutherland by such a sale, so as to leave no estate to be subsequently conveyed by him, and an ordinary *equitable* title, will not enable any one to maintain the action of ejectment. The plaintiff can succeed in this action, only by showing that the title of Sutherland to this land, at the time when the levy was made, was of this extraordinary description.

We will, therefore, proceed to examine the nature of the title held by him at that period. He was *the* purchaser, by deed, from an Indian reservee, and the consideration for the purchase of the land having been paid in the presence of the certifying agent, appointed by the executive, the deed was certified in the usual form, and subsequently approved by the President of the United States. It has been determined several times by this court, that as soon as the individual Indians were located on their respective reservations, they acquired a *legal title*

Rosser *vs.* Bradford.

to the occupancy of the land, with the power to sell it, and consequently, to evidence the sale by a conveyance, which sale becomes valid to all intents and purposes, when approved by the President; and that such a conveyance from the reservee, after such approval, will enable the purchaser to maint in any possessory action to recover the land—(Jones and Parsons' heirs vs. Inge and Mardis' heirs, 5 Porter, 327; Fipps vs. McGehee et al. 5 Porter, 413.)

In the case of Goodlet vs. Smithson, (5 Porter, 215,) we determined that the purchaser of land from the United States, acquired such a title by the act of purchase, evidenced by the usual receipt of the receiver of public monies, as was subject to be sold under an execution from a court of law. These cases go very far to determine the present case, both as to the nature of the title, and its subjection to the ordinary process of execution. It is supposed, by the plaintiff's counsel, that a material distinction can be drawn between this, and the case of Goodlet vs. Smithson, as by the terms of the treaty, the purchaser from the Indian reservee does not acquire any right to a title from the United States, until the payment of the purchase money is made, notwithstanding the contract of sale has been approved by the President. It is true, that this difference exists between the cases, but it does not seem to us to introduce any new principle.

The *right* to receive the evidence of title from the United States, depends, in either case, on the actual payment of the purchase money. In the case of the sale of the public lands, the mode of entering into the contract is prescribed by law; in the case of the sale of the Indian

reservation, it is left to the parties, but before any validity can be given to the contract, it must be approved by the President. In the one case, the register of the land office is the agent who makes the sale; in the other, it is the Indian reservee. It may be conceded, that in these, as in all other cases in which the government acts through the medium of agents, that the power exists, and may be rightfully exercised, to examine and ascertain, if the prerequisites of the law have been complied with. If a pretended payment has been made to the register, or a fraud practised on him, there would be no obligation on the part of the United States, to give a patent to the fraudulent purchaser, nor is the individual who has procured the approval of the President to his fraudulent contract, or pretended contract with the Indian reservee, in a better situation. The setting aside a fraudulent sale, or an approval procured by fraud, is a very different thing from declining to issue a patent, where the sale has been regular and legal, or where the approval has been made in the true spirit and intention of the treaty. It may be, that if such cases should occur, that the injured party would be without specific relief by *mandamus* to the executive officers, but it is not a legitimate argument to urge, that any officer of government will refuse to perform any act required by law. The case which has been supposed by the counsel for the plaintiff, of two or more approvals by the President, for the same land, under different contracts, is not more difficult of solution, than if two certificates or patents were issued by a register of a land office, or from the general land office. In the two first cases, the courts would necessarily have

Rosser *vs*. Bradford.

to determine which approval or certificate was issued in conformity with the law, and the same rule would probably apply to the case of conflicting patents, as, in this country, the title to the public domain cannot pass at the pleasure of the executive, but the mode of its alienation is prescribed by law.

Another distinction is attempted to be shown between the principle which it is supposed should govern this case, and that of Goodlet vs. Smithson, and arises from the use of the term *title*, in the latter clause of the third article of the treaty. This word is evidently used as an equivalent for *patent*, in the ordinary acceptation in which that word is received, when applied to a grant by the government. If a title is the *right* whereby one holds lands, it cannot be denied, that a *title* to the occupancy, coupled with the power to sell, is vested by the treaty in the Indian reservee, and although this is certainly an incomplete title, and subject to be divested by the grant of the government, evidenced by act of Congress, or by what is usually termed a patent, it is nevertheless a sufficient *right* to be recognised and enforced by the courts. All of the arguments *ab inconvenienti*, might, however, be well answered with the remark, that the case on the record is free from all the supposed difficulties, and that it will be sufficient to dispose of the actual case before the court, and the supposed ones, whenever they arise.

It is not perceived that the decision of this court, in the case of Chinnubee vs. Nix, (3 Porter, 362,) has any material bearing on this case. There, the question before the court was, whether the widow of an Indian reservee, was entitled to dower in the reserved land which her

husband had sold previous to his death, and the determination was, that the Indian was seized of no dowable estate.    This decision cannot be understood as pronouncing, that the Indian reservee had no title to the land occupied by him, or that none could be transmitted to his approved purchaser.    It cannot be doubted, when the treaty is examined, that the reservee's had a right, which is synonimous with title, to occupy the lands; this right could be transmitted to an approved purchaser, who also became entitled to a title, *i. e.*, a patent from the United States.

It has been argued, that the act of eighteen hundred and twenty (Aik. Dig. 287, 173,) has an influence on this case.    This statute did no more than repeal so much of the 9th section of the act of eighteen hundred and twelve, (Aik. Dig. 163,) as vested the equitable estate of a defendant in execution, where his lands were sold, in the purchaser, and revived the common law rule.    By the common law, any legal estate in lands could be sold under execution, if coupled with a beneficial interest.

It has been supposed by the plaintiff's counsel, that as Sutherland never had the actual possession of the land, that the mere right to the possession, was not capable of sale.    By the statute of uses, (Aik. Dig. 94,) the possession of the bargainor is transferred to the bargainee, and if the Indian reservee was possessed, or entitled to possession, all his rights passed to the purchaser from him, and could be transmitted to others, unless an actual adverse possession existed at the time of executing the deed of conveyance.

The argument, that the estate of Sutherland was ex-

Rosser *vs.* Bradford.

empt from execution, because the estate of the Indian reservee could not be alienated by the same means, will not stand the test of examination. It is evident, that no sale under execution, or otherwise, without the consent of the Indian, could divest him of his right to occupy the land, but this exemption was a peculiar privilege, personal to the Indian alone, and not an incident of the estate, capable of being transmitted to his grantee. We have several statutes, which authorise the exemption of chattels of a peculiar description, or in the possession of particular individuals, from execution, yet it has never been supposed, that this exemption would continue after the chattel had passed to another, or had lost its distinctive character.

Our conclusion is, that the title to the land, the subject of this suit, passed to the defendant, Bradford, by the sheriff's sale, and that no interest remained in Sutherland, which could be conveyed to the plaintiff.

Let the judgment be affirmed.