## PARKS *vs.* BROOKS.

1. A wife has an inchoate right to dower in land, purchased by her husband from an Indian reservee under the Creek Treaty of 1832, so soon as the contract is approved by the President of the United States.

2. An inchoate right to dower is such an incumbrance on land as will authorise a purchaser, who has contracted for a good and lawful title, to refuse to perform the contract.

3. Where a vendee retains possession of the land, a Court of Equity will not rescind the contract, unless there be some special ground for its interposition—such as the vendor's inability to make title, coupled with his insolvency, or fraud in the sale.

4. A Court of Equity will not rescind a contract, where the vendor, although unable to make title, is perfectly solvent, and has been guilty of no fraud, on the ground that he is a resident of another State, when it is shown that he was such at the time of the contract, and has so continued ever since.

Error to the Chancery Court of Macon.   Tried before the Hon. Wilie W. Mason, chancellor.

THIS was a bill filed on the 6th of March 1846, by defendant against the plaintiff in error, for the rescision of a contract for the purchase of land.   It alleges that on the 20th November 1841, the said defendant purchased from the plaintiff

the land described in the bill, at the price of three thousand dollars, for which he gave his three several promissory notes, payable the 25th December of the years 1842, 1843 and 1844 respectively, and received from plaintiff his bond, conditioned to make titles on the payment of the purchase money: , that on the — day of —— 1842, he paid two hundred dollars, and on the — day of —— 1843, six hundred dollars more on the first note that fell due; that on the — day of —— 1845, he went to said plaintiff in person and offered to pay the entire balance of the purchase money, if said plaintiff could and would make him a good and lawful title to said land, and that said plaintiff then and there failed and refused to do so, and acknowledged that no patent had issued for said land, and that the only evidence of title he had was the bond for titles of one Alfred Hardy: that at the time of the purchase of said land, said plaintiff stated and represented and assured defendant that he could and would be able and ready to make him a good and lawful title to said land, according to the terms of his bond— that there would be no difficulty about the title—that defendant would be perfectly safe in making the purchase, and that the patent would issue and the title be perfected in him in a short time: that believing and confiding in these representations, he was induced to make the purchase: that said plaintiff has fraudulently conveyed away his property and placed himself in such a situation that nothing can be made out of him by the ordinary course of law, and that he has done this with the avowed intention of forcing out of him, defendant, the payment of the purchase money, of avoiding, by means of his fraudulent insolvency, the payment of such recovery as the said defendant might obtain against him by a suit in Georgia on said bond, and of keeping the title to said land at the same time beyond the defendant's reach: that said plaintiff resides in Georgia, and is insolvent and unable to respond in damages on said bond: that on the 9th day of August 1845, said plaintiff commenced his action in the Circuit Court of Macon county against the defendant on the said three several promissory notes, and is prosecuting the same to judgment: that soon after said purchase defendant went into possession of the land and made valuable improvements thereon: that he has held and still holds possession to indemnify him for the value

of the improvements he has made and for that portion of the purchase money he has paid: that the rents of said land are of inconsiderable value, and fall far short of indemnifying him, during the time he has had the possession thereof, for the improvements and purchase money paid: that he has been greatly injured by the refusal and inability of plaintiff to make a good and legal title, in this, that the land has diminished in value very considerably, and would not now, with the improvements, sell for as much as he, defendant, could have sold the land alone: that he has been prohibited from selling it for want of a title: and that he is ready and willing, and has been ever since said plaintiff failed and was unable to comply with his contract, and now offers to rescind it, &c. The bond for titles is made an exhibit to the bill, from which it appears that plaintiff was a citizen of Georgia at the time of the contract.

On the 18th April 1846, the plaintiff answered the bill. The answer admits the sale of the land, the terms, the execution of the notes and bonds, and the payment of a part of the purchase money as alleged in the bill. It also admits that defendant and plaintiff had an interview in the early part of 1845 in reference to the title to the land, that defendant then said he would like to pay the balance of the purchase money, but was not satisfied about the title, and that plaintiff told him the patent had not issued, and that he had no other evidence of title than the bond of Alfred Hardy, who held the approved contract for the land. It further states, that in that conversation, plaintiff told him that a patent would issue as soon the approved contract was presented at the proper department at Washington, and that he proposed to said defendant to postpone the matter until he could write to Hardy and ascertain from him whether there was any difficulty in procuring a complete title to the land, and that defendant assented to the proposition: that he did write to Hardy on the subject, and that Hardy, on the 14th June 1845, procured a patent to be issued to him, Hardy, cuted a warranty deed to defendant. The answer denies that de- and on the 21st July thereafter, in conjunction with his wife, exe- fendant offered to pay the balance of the purchase money or any part thereof, or that he exhibited any money or demanded a title, or that plaintiff told him he could not make him a title,

but states that plaintiff asked him if he intended to pay any of
the purchase money, and that he evaded an answer, by saying
that the land had been certified and would be patented to Geo.
Stone, who was insolvent, and that it would be subject to his
debts. It admits that at the time of the purchase plaintiff rep-
resented to defendant that there would be no difficulty about
the title, that it could be procured at any time with reasonable
diligence, and that defendant may have been governed by
these representations: asserts his readiness and willingness
now and long before the filing of the bill to make to defend-
ant a perfect title on the payment of the balance of the purchase
money, his ability to respond in damages, and positively de-
nies each and every allegation of fraud and insolvency. Ex-
ceptions were filed by defendant to the answer, some of which
of a mere formal and technical character were sustained by
the register, and on the 21st May 1846, the plaintiff answered
over substantially as before. On the 19th May 1846, the de-
fendant filed an amendment to his bill, in which he alleges
that since the exhibition of his original bill he has procured
from Washington a transcript of the Indian contract for said
land and assignments thereon, from which it appears that it
was approved to John W. Freeman by the President of the
United States on the 1st November 1834, transfered by him
by assignment, not under seal, to Jeremiah L. Walker, on the
17th March 1836, by Walker to John D. Chappell on the 5th
April 1836, and by Chappell to said Hardy on the 14th No-
vember 1836. The said transcript is made an exhibit to the
amended bill. It then alleges that Walker and Chappell were
both married men whilst they owned the land; that their wives
are still living; that Chappell is dead; and that said land is
encumbered with the inchoate right of dower of Mrs. Walker
and the vested dower right of Mrs. Chappell. It further al-
leges that defendant, relying on and confiding in the represen-
tations of plaintiff, purchased the land without seeing it, and
that said plaintiff falsely and fraudulently represented to him
that the land was all good except not more than forty acres of
hog-bed land, when in truth and in fact about one-third or at
least one hundred acres of it were worthless or nearly so, and
unfit for cultivation.

The answer of plaintiff to the amended bill admits the cor-

rectness of the transcript made an exhibit and states that plaintiff knows nothing, nor is he informed as to whether said Walker was a married man or whether his wife is still living, but insists, that if the facts be so, she would not on the death of her husband be entitled to dower in said land. It further admits that Chappell was a married man, that he is dead leaving a widow who is still alive, but insists that she has never had any right of dower in said land, and if she had, her husband died testate, making provision for her in his will, and that she accepted the provisions thereof. The answer expressly denies that plaintiff falsely and fraudulently represented that all except forty acres of said land was good, and states that he made no representations, as to the character of the land, except upon the information of Hardy, and the source of his information was stated at the time.

Testimony was introduced at the hearing by both parties. The defendant's proof showed that Walker and Freeman were married men, at the time they respectively held said approved contract, and that their wives were still living; that Chappell was a married man while he held it, that he is dead, and his widow is alive : and that defendant had made some improvements on the land in clearing, fencing and erecting cabins, to the value of about two hundred dollars. The plaintiff introduced in evidence the patent for the land to said Hardy, dated 14th June 1845, a deed from Hardy and wife to plaintiff, dated 21st July 1845 and duly recorded, a deed from Rebecca Walker, widow of Jeremiah L. Walker, relinquishing her dower in said land, to said plaintiff, dated 13th Sept. 1846, and the admission of defendant that John D. Chappell died testate, making provision in his will for his widow, and that she accepted and was satisfied with the same. The plaintiff also proved that he lived in Georgia, at the time of said contract, that defendant wrote to him with a view to purchase said land, prior to the contract, and expressed himself satisfied when told that he had made a bad bargain ; that the quantity of hogbed land on the tract did not lessen its value, and that it was worth at the time of the sale the price defendant was to give for it, as such lands then sold; that in May 1845, defendant and plaintiff had a conversation about said land, that defendant offered to pay plaintiff for the land if he could get a

good title, but did not produce or exhibit any money; that plaintiff offered to make him a warranty title, to which he objected because the patent had not issued, stating to plaintiff that according to the contract the land was to be patented, to which plaintiff replied that he had urged Hardy to get the patent, and it was through his negligence that it had not been done long ago; that defendant then said he was afraid it would issue in the name of Stone, who once owned the land and was now insolvent with unsatisfied executions against him, and that he might be involved in a law suit: that plaintiff told defendant he held the bond of Hardy; that Hardy held the approved contract, and that a patent could be obtained at any time the said approved contract was presented at the Land Office in Washington: that he would write to Hardy and have the patent issued, to which defendant then agreed. The plaintiff's proof further shows, that he is entirely solvent and able to respond in damages on the bond; that defendant has had possession of the land up to the present time; that there were one hundred acres cleared at the time of the purchase, and about forty more cleared in 1832, and that the annual rents have been worth from $1 50 to $2 50 per acre.

The chancellor on the final hearing decreed in favor of the defendant in error.

COCKE, for plaintiff:

1. The title of plaintiff is a complete legal title, free from incumbrance.—1st. The estate of Freeman, Walker and Chappell severally, under the approved contract and the assignments thereof, was equitable.—Chinnubbee v. Nicks, et al. 3 Port. 362; Jones, &c. v. Inge & Mardis' heirs, 5 Port. 327; Falkner v. Jones & Leith, 12 Ala. 165. 2d. In case of equitable title, if the husband disposes of his equity and then dies, the wife is not entitled to dower.—Herron v. Williamson, Little's Sel. Cas. 250; Lawson v. Morton, 6 Dana, 471; Edmondson v. Montague, 14 Ala. 370.

2. No false and fraudulent representations are shewn to have been made by plaintiff either as to the title or quality of the land.—1st. The representations made by plaintiff to defendant were matters of opinion or on hearsay and not false and fraudulent.—Spence v. Duren, et al. 3 Ala. 251; Steele v.

Kinkle, et al. ib. 352; Juzan, et al. v. Toulmin, 9 ib. 662. 2d. The defendant shews by his bill that he knew the situation of the title, and the testimony of Baldwin, the subscribing witness to the bond, strongly tends to prove that he had examined the land before the purchase was made; he consequently had an equal opportunity with plaintiff to be informed both as to the title and quality of the land, and could not have been deceived.—Craig v. Blow, 3 Stewart, 452. 3d. His long continued possession and acquiescence, under the circumstances, are a forfeiture of all claim to the active interference of a court of chancery. McGowan v. Garrard, et al. 2 Stew. 47; Griggs v. Woodruff, et al. 14 Ala. 9; Pintard v. Martin, 1 S. & M. Ch. 126; Edwards v. Roberts, 7 S. & M. 544.

3. As a general rule, where a vendee retains the possession of land, a court of chancery will not rescind the contract, unless there is some special ground for its interference—such as the vendor's inability to make title, coupled with insolvency, or fraud in the sale.—Duncan v. Jeter, 5 Ala. 604; Long and Long v. Brown, et al. 4 Ala. 622; Barnett v. Gaines, et al., 8 Ala. 373; Griggs v. Woodruff, et al., 14 Ala., *sup.* 1st. The answer of the vendor, denying expressly every allegation of insolvency or fraud, but expressing the opinion, that he could make such a title as his bond required, although that opinion is not sustained by the evidence, cannot of itself be regarded as sufficient to vary the general rule. 2d. Nor can the non-residence of the plaintiff, a fact that existed and was known to the defendant at the time of the purchase, have that effect.

McLester, for defendant:

1. At the time Brooks purchased the land, no patent had issued, and there was no evidence of title within his reach. But Parks represented his title good, and that there would be no difficulty about it, and Brooks relied on these representations, which he had a right to do.—Young v. Harris' adm'r, et al. 2 Ala. Rep. 108; 1 Story's Rep. 190; 3 ib. 700.

2. There is nothing in the will of said Chappell taking away the right of his wife to dower in said land—her assent to, and acceptance of the provision made in the will of her husband, does not under the statute take away her right to dower in land which constituted no part of the estate of her husband.

The object of the statutes, passed on the subject, was to prevent unequal and unjust distributions of property between mothers and children.

3. Mrs. Freeman's right to dower is clear; and it is believed that either of these rights of dower constitute a sufficient objection to the title the platntiff in error proposes to make. Barnett v. Gaines, et al. 8 Ala. Rep. 374.

4. The plaintiff in error resides in the State of Georgia, and without the interposition of a court of equity in his aid, Brooks would have been compelled to pay the money for said land, to have accepted a defective title, or have been driven to sue on the bond in the State of Georgia, to recover back the purchase money after having paid it. Will the courts of equity of Alabama suffer her citizens to be driven to foreign countries to recover their rights while they have ample powers to protect them? Will not the court interpose by injunction, especially in a case when the party who resides out of the State has been guilty of false representations as to his ability to perform his contract? See Stewart, et al. v. Chamberlain 6 Dana's Rep. 32; Merrill v. Fowler, ib. 305.

DARGAN, J.—In the case of Shields v. Lyon, Minor's Rep. 278, this court decided that the certificate of the board of commissioners, confirming a claim to land under a Spanish warrant of survey, is evidence of such an estate as entitles the widow to dower under our statutes; that it was such a title as gave the party to whom it was confirmed a perfect right to call on the government for a patent, and hence the widow was entitled to dower therein. This decission was made at an early day after the organization of our State government, and from that time until the present, it has been considered as settled law, that if the husband held such evidence of title as entitled him to demand and receive from the government of the United States a patent for the land, his widow was entitled to dower therein. See the cases collected in Edmondson v. Montague, 14 Ala. 370. Under the treaty of 24th March 1832 between the United States and the tribe of Creek Indians, an Indian reservee was authorised to sell the land reserved to him, and if the contract of sale was ratified, and approved of by the President, the purchaser became entitled to a patent.

Chinnubbee v Nicks, 3 Porter 362. In the case of Jones & Parsons v. The Heirs of Inge, et al. 5 Porter, 327, it is said, that an Indian reservee, when the land reserved to him had been selected and set apart by location, became entitled to the possession until he had disposed of it according to the terms of the treaty, or had abandoned it; that this right of possession gave him a legal title, which a court of law would protect and enforce, and that his purchaser or grantee, as soon as the contract of purchase became valid, by the approval of the President, became entitled to all the estate vested in the Indian by the treaty. A purchaser from an Indian reservee, after his purchase has received the sanction of the President, becomes entitled to a patent from the Federal Government without having to perform any condition precedent to his right to demand it. If we were therefore to admit, that the contract of purchase was not the highest evidence of legal title or seizin, but that the patent, issued in pursuance of that contract, bore that evidence, yet as the contract, by the terms of the treaty, gave a perfect right to the *patent*, the wife of the purchaser becomes entitled to dower, after the contract of purchase made with the Indian reservee has been ratified by the President, and the issuance of the patent to her husband is not necessary to complete her right to dower, as against the heir of her husband or his assignee. Having attained this conclusion, it follows that Mrs. Freeman, the wife of John W. Freeman, who purchased from the Indian reservee, has an inchoate right to dower in the lands, which will become perfect on the contingency of her surviving him. The contract made by Freeman was ratified by the President. After this was done he transfered the contract, but Mrs. Freeman did not release her dower. The land is therefore still charged with the burthen of her dower.

2. The bond of the defendant stipulates for a good and lawful title, and the question is, can a purchaser, who contracts for a good title, and who relied on the representations of the vendor, that he could make such, be compelled to receive a title which is charged with an inchoate right of dower in favor of the wife of a remote vendor? To justify a court of equity in compelling a purchaser to receive a title, when he contracts for a good one, relying on the ability of his vendor

39

to make such, the title of the vendor should be unquestionably good, and it is said, "like Cæsar's wife, ought even to be free from suspicon."—1 Sugden on Vendors, 340.. A court of equity will never compel a purchaser to take a title, unless it could say, you can never be ousted, holding the title the vendor proposes to give you.  If, however the title proposed is liable to be defeated in the whole or part, upon the contingency of the survivorship of a wife of a remote vendor, or on any other contingency within the range of probability, the court should not decree a specific performance..  In the case of Porter v. Noyes, 2 Greenl. Rep. 22, the contract was that the vendor should make a warranty title, free and clear of all incumbrances, but at the time the deed was tendered, it appeared that one C. had an inchoate right of dower in the premises:. The court considered this as an existing incumbrance that justified the vendee in refusing to perform the contract on his part.  To the same effect is the case of Clarke v. Redman, 1 Blackf. 379.—See also Judson v. Wass, 11 Johns. 525..

3.  The defendant has failed to show such a title as a court of equity will compel the complainant to accept, on account of the dower right of Mrs. Freeman, and of course the complainant may abandon the contract at any time previous to the removal of that objection to the defendant's title; but as yet, the contract is not rescinded, nor the possession abandoned.. The complainant, however, offers by his bill to rescind the contract, and claims to hold on to the land as an indemnity for the portion of the purchase money he has paid, and the improvements made upon it.  The question therefore arises whether the complainant has made out such a case as requires a court of equity actively to interfere in his behalf, and to rescind the contract for him, whilst he holds on to all the benefits confered by the contract, to wit, the possession and use of the land.  There is a marked distinction between rescinding a contract, and refusing to enforce one, and it is well settled, that a court of equity may refuse to rescind a contract, when it would not specifically enforce it.  Beck v. Simmons and Kornegay, 7 Ala. 71; Seymore v. Delancy, 3 Cowen, 530; Jackson v. Ashton, 11 Peters, 248:. I have not been able to find a case where a court of equity has rescinded a contract of a sale of land, at the instance of the purchaser, while he

holds on to the possession, unless the contract has been tainted with fraud, or unless injury would result to the purchaser from giving up the possession. In the case of Young v. Harris, 2 Ala. 108, this court decreed the rescission of a contract at the suit of the vendee, who had taken and retained the possession, and also charged the land with the portion of the purchase money that had been paid, but the complainant made out a clear case of *fraud.* The authorities all agree, that if a purchaser has been induced by fraudulent means to enter into a contract, and expends money, or pays it as purchase money, he may apply to a court of equity for a rescission and relief, without yielding up the possession.—Edwards v. McLeary, 1 Cooper's Sel. Cases, 308; 2 Swanston, 303. But in the case of Duncan v. Jeter, 5 Ala. 604, it was said in reference to the abandonment of possession, that circumstances may exist which will authorise a vendee to retain it whilst he seeks a rescission of the contract, as where the vendee was insolvent, and was unable, or unwilling to make title; in such a case the possession may be retained as the only means of reimbursement; and in the case of Long, et al. v. Brown, 4 Ala. 622, this court held, that equity ought not to interfere between the parties although the contract be executory, where no fraud has been practiced, but will leave them to seek the redress the law will afford, unless there be some special ground for the interposition of the court of equity. Governed by these authorities, as the complainant yet retains the possession of the land, and derives all the benefits contemplated by the contract, he must show some other reason for the interference of the court in his behalf, than the mere dry legal right he has by the terms of the contract, to abandon it on his part. In addition to showing that the contract could not be specifically enforced, he must either show fraud, or that injury would result to him from the insolvency of the vendor. If neither of these circumstances be shown, we must leave him to exercise his legal rights as he may see fit. The bill, answer and proofs, in our opinion, entirely fail to show either fraud or insolvency on the part of the vendor, and we therefore must decline to interfere for the purpose of rescinding the contract.

It is, however, contended, that as the vendor resides in Georgia, that this is a sufficient reason to justify the court in re-

scinding the contract. In this we cannot agree with the defendant's counsel. The vendor resided in Georgia at the time of the purchase, and this was known to the complainant—he still resides there, and is shown to be solvent; he has not been guilty of any fraud, and the only defect in his title, is an inchoate right to dower in the wife of a remote vendor, whose husband is still living. Under such circumstances, a court of equity should not be active in rescinding the contract, but should leave the complainant to the exercise of his legal rights. We have not noticed the question of dower in the wives of the other vendors, through whom the defendant claims title, because two of them have released their right of dower, if any they ever had, and we think Mrs. Chappell is barred of her right by the provisions of her husband's will, as it is shown that she has not dissented from it, but has received the lands and other property devised to her. It is true, that it is frequently a difficult question to determine when a widow shall be put to her election between her right of dower and the provision made for her by the will of her husband, but I think she would be when her claim to dower would disturb the devise, or be inconsistent with her own title as devisee, as well as the title of other devisees. For instance, if the land be devised to be equally divided between the wife and children, she cannot hold her share as devisee and also from the same land claim dower, but she is put to her election, either to take as doweress or as devisee. This is the character of the will of Chappell, and although it is not expressed in *totidem verbis*, that the provision for his wife was intended in lieu of dower, yet he could not have intended that she should claim her dower out of the lands he devised and also claim her portion as devisee.

This concludes our examination of all the questions presented by the briefs and argument of counsel, and the result of our opinion is, that the chancellor erred in decreeing a rescission of the contract. He should have declined to interfere. We must therefore reverse his decree, and render a decree dismissing the bill.

CHILTON, J., not sitting.