## GREENE *vs.* ALLEN, ADM'R, &C.

[COVENANT FOR BREACH OF TITLE-BOND.]

1. *Rights and remedies of purchaser.*—A purchaser of land has a right to demand a good title, and, after breach, may either proceed for specific performance, or sue on his bond for title.
2. *Breach of title-bond.*—The vendor cannot defend an action on his title-bond, after eviction of the purchaser under title paramount, by showing that he had a complete equitable title to the land.

3. *Consideration of promise.*—A promise by the purchaser to his vendor's surety on the title-bond, when informed by the latter that the legal title was not in the person named in the bond, to the effect that he would withhold the payment of the purchase-money, or would himself procure a surrender of the outstanding legal title, is without consideration, and not available to the surety as a defense to an action on the title-bond.

4. *Recoupment for rents and profits.*—In an action at law on a title-bond, to recover damages for a breach caused by a failure of the vendor's title, the defendant cannot recoup for the rents and profits of the land received by the purchaser.

5. *Error without injury in admission of irrelevant evidence.*—The admission of irrelevant evidence will not work a reversal of the judgment, when the record clearly shows that it could not have injured the appellant; as where the plaintiff is allowed to prove an unsuccessful attempt on his part to comply with a promise which was subsequent to the contract sued on, and which was without consideration.

APPEAL from the Circuit Court of Benton, now Calhoun county.

Tried before the Hon. THOS. A. WALKER.

THIS action was brought by the appellee, as administrator of Lecil Bruton, deceased, against Aaron Greene; was commenced on the 8th September, 1848; and was founded on a penal bond, executed by the defendant and one Rezin R. Chilton, and dated the 12th November, 1840, the condition of which was as follows: "Whereas I, the said Rezin R. Chilton, have bargained and sold to the said Lecil Bruton a certain tract or parcel of land, situate and lying in the county of Benton, viz., the southeast quarter of section 15, township 15, range 6 east, containing one hundred and sixty acres, more or less; we, the above bounden are to make unto the said Bruton a good and sufficient title in fee-simple, so soon as a title can be obtained from Jesse Duren; so soon as this deed is made, then this obligation to be void," &c. The breaches assigned in the declaration were: 1st, that neither said Chilton nor said Duren, at the date of said bond or at any other time, ever had a good and sufficient title to said land, but the title thereto was in one E. M. Driver; and that neither said Chilton nor said defendant ever made titles thereto to said Bruton in his lifetime, or to his heirs since his death; 2d, that neither Chilton nor the defendant ever made a fee-simple title to said land to

said Bruton, although he lived more than three years after the date of said bond, but wholly failed to keep and perform their said covenant; 3d, that neither Chilton nor the defendant ever obtained a title from said Duren, nor did they make any title to said Bruton for said land, either in fee-simple or otherwise; and, 4th, that neither Chilton nor the defendant ever procured titles to said land from Duren, nor did they or either of them ever make a deed in fee-simple to said Bruton for the same, but wholly failed to keep and perform their said covenant. The cause was tried under an agreement," "that any matter which the defendant could legally plead in bar should be considered so pleaded."

On the trial, as appears from the bill of exceptions, the plaintiff read in evidence the bond on which the suit was founded; proved, by one Woodruff, that the land was worth, in November, 1840, $2,000; then offered in evidence a patent from the United States, dated October 20, 1835, by which the land described in the bond was conveyed to one E. M. Driver, and then read an agreement of counsel in these words: "In this case, it is agreed between us, counsel for plaintiff and defendant, that a decree was rendered in the chancery court at Talladega, on the —— of ———, 1839, in the case of Eli M. Driver against the heirs and representatives of Charles W. Peters, divesting them of title to the west half of the south-east quarter of section 15, township 15, range 6, in Benton county, and investing said Driver with it; that the case of Lecil Bruton, in the chancery court at Jacksonville, afterwards revived in the names of his heirs and representatives, against said Driver, Jesse Duren and others, was taken to the supreme court in 184–, and was affirmed; and that the original papers in said suit, if relevant, may be used on the trial of this suit without a transcript." "Woodruff further testified, that Bruton, before purchasing said land from Chilton, asked witness as to its value; that he answered, it was worth $2,000 if he could get a good title; that Bruton also asked, whether a bond, with the name of W. Raiford or Aaron Greene on it, would be good; and witness told him that it would. He further

15

testified, that the defendant never claimed the land, and never offered to sell it, so far as he knew; and that Chilton claimed the land, and sold it to Bruton. The plaintiff here rested his case."

"The defendant then introduced one Kirksey as a witness, who testified, that Bruton, in January or February, 1841, came to the defendant's plantation, where witness, defendant and one John T. Findlay were at work together, clearing land, &c.; that defendant asked Bruton, soon after he came up to them, if he had moved down to the land which he had bought from R. R. Chilton; that Bruton answered, he had not, but had just brought down two hands with him to go to work on it, who had gone off to grind their axes, and would go to work on it next day; that defendant then asked, if he had paid any of the purchase-money for said land; that Bruton answered, he had not, and that none of it was due, but the first payment would be due in a month or two from that time; that defendant then told Bruton, he was glad of it, as Jesse Duren had just come from Sumter county, where he lived, and had informed him (defendant) that the title to said land was not in him, but in W. H. Moore, of Talladega, who knew all about it, and would arrange the title; that defendant further told Bruton, that Duren also informed him that Chilton knew the title was not in him (Duren,) and that if they would go and see Moore, and Moore refused to arrange the title, he (Duren) would go with them to Moore, and get him to do it; that defendant, after informing Bruton of these things, told him not to pay over any of the purchase-money, that the bond for titles was not worth a cent, and that if he paid any of the purchase-money he did it at his own risk; that Bruton then told defendant, that he was glad he had given him the foregoing information—that he would go and see Chilton, and, if Chilton would go with him, they would go to Moore and have the matter as to the title arranged; that if Chilton would not go with him, he would go by himself to Moore, and arrange the title if he could; that if he failed to get it arranged, he would come back and let defendant know it; and that he would not

pay over the purchase-money until the title was arranged."
The defendant then introduced John T. Findlay as a wit-
ness, "whose testimony was substantially the same as
that of said Kirksey;" and afterwards proved by Wm. H.
Moore, "that Bruton never called on him, nor said any-
thing to him, in relation to said land, or the title thereto,
until some time in the year 1843, and never sent any person
to him for any purpose whatever, and that he never saw
Bruton until the year 1843."

It was shown that Bruton took possession of the land
"soon after the interview and occurrence between him
and defendant above detailed," and continued to occupy
and cultivate it until his death. The defendant offered
to prove "the value of the rent of said land for the years
1841 and 1842, whilst said Bruton was in the possession
and use thereof;" but the court excluded the evidence, on
the plaintiff's objection, and the defendant excepted.

For the purpose of showing the condition of the title
to the land mentioned in the bond, and the validity of
the sale by R. R. Chilton to Bruton, the defendant offered
to prove that, in 1832-5, a verbal partnership existed be-
tween said E. M. Driver, Wm. H. Moore, C. W. Peters and
others, for the purpose of buying and selling lands on spec-
ulation; that the said land was bid off at the government
sales, by said Peters, for the company; that the company
afterwards sold it, verbally, to said Moore and Driver;
that Jesse Driver, on the 27th May, 1834, without any
authority, sold the land to one McReynolds; that Moore
and Driver subsequently "ratified and approved" this
sale, and received the purchase-money from McReynolds;
that McReynolds, on the 12th March, 1837, transferred
Driver's title-bond to Palatiah Chilton, and "authorized
said Moore and Driver, or either of them, to make title
to him;" and that said P. Chilton, in like manner, on the
7th August, 1840, transferred the title-bond to R. R.
Chilton, who subsequently sold to Bruton. The court
excluded each portion of this evidence, on the plaintiff's
objection, and the defendant excepted.

For the purpose of showing "that Bruton had tried to
comply with his promise to defendant as proved by the

witnesses Kirksey and Findlay, and had endeavored to obtain titles to said lands from Duren and defendant," the plaintiff read in evidence, against the defendant's objection, the proceedings had in a chancery suit, which was instituted by said Bruton against Duren, Driver, Chilton and others, to obtain either a rescission or specific performance of his contract of purchase; in which suit, on final hearing, the complainant's bill was dismissed. The defendant excepted to the admission of this evidence.

The court charged the jury as follows:

"1. That although they believed the testimony of the witnesses Kirksey and Findlay, and although Bruton had not paid any of the purchase-money at the time of the promise to which they testified, and although Greene was merely the surety of Chilton on the bond; yet, if they believed that Bruton afterwards paid the purchase-money in accordance with the terms of his contract with Chilton, and could not have refused to do so without a breach on his part,—in that case Greene could not insist on reducing the damages to any extent.

"2. That if they found for the plaintiff, the measure of damages was the value of the land at the time of the sale, with interest thereon from the time when title was to be made to the present."

The defendant excepted to each of these charges, and he now assigns them as error, together with the other rulings of the court above stated.

MORGAN & MARTIN, for appellant.

PARSONS & WHITE, contra.

STONE, J.—It is settled in this State, that a purchaser of land has a right to demand a good title.—Cullum v. Br. Bank, 4 Ala. 21; Hunter v. O'Neal, 12 Ala. 37; Parks v. Brooks, 16 Ala. 529; Springle v. Shields, 17 Ala. 296; Thrasher v. Pinckard, 23 Ala. 616.

After breach, a purchaser may either proceed for specific performance, or sue on his bond for title.—Haines v.

Farley, 2 Porter, 528; Clemens v. Loggins, 1 Ala. 622; Griggs v. Woodruff, 14 Ala. 9.

These citations abundantly prove, that it is the vendor's duty to acquire a good title, and be prepared to convey to his vendee, whenever, by the terms of the contract, the latter has a right to demand it.—Clemens v. Loggins, 2 Ala.

[2.] No matter how complete an equity Chilton may have had in the land in controversy, that was not a compliance with his bond. He had no right to require his vendee, Bruton, to incur the labor and expense of litigation, necessary to divest the legal title out of Driver. Hence, all the proof, tending to show authority in Duren to sell, and ratification of such sale by Driver and Moore, was rightly excluded by the primary court.

[3.] Neither could Greene demand, as a right, that Bruton should withhold the payment of the purchase-money, or himself procure a surrender of the title by Moore to Chilton. The former would probably have exposed him to expensive and unsuccessful litigation; while, by the terms of the contract, the latter duty rested on Greene's principal. Bruton's agreement to visit Moore, and endeavor to obtain a surrender of the title, was a promise without consideration, and Greene can claim nothing for its breach.

[4.] We have some decisions which hold, that where a purchaser proceeds in equity for a rescission of a contract for a sale of land, on account of defective title, he must account for rents and profits, if any have accrued to him. See Walton v. Bonham, 24 Ala. 513; Young v. Harris, 2 Ala.; Williams v. Mitchell's Adm'r, 30 Ala. 299. But we know of no case in which this doctrine has been applied to a suit at law on a bond for title, where the breach alleged is the failure of the vendor's title. If a vendor in such case could recoup, his vendee might be liable to a double recovery: first to his vendor, and secondly to the true owner of the land. Moreover, such recoupment might operate a direct pecuniary benefit to a fraudulent vendor, who would thus speculate on his own

tortius acts. We prefer not to enlarge a principle, which rests on a foundation so questionable.

[5.] The only remaining question is the admissibility of the proceedings in the chancery suit by Bruton v. Greene and others, relating to this transaction. We cannot perceive the necessity of this evidence—nor is its materiality apparent. We have seen that the purchaser was under no obligation to perfect his vendor's title; and it follows that proof by him of an unsuccessful attempt to do so, was simply an act of supererogation. We are satisfied, however, that this evidence could not possibly have injured the defendant. It was, at most, error without injury.

The judgment of the circuit court is affirmed.

RICE, C. J., and WALKER, J., not sitting.